CALLAHAM v. ROBINSON.

SAME v. CALLAHAM.

Testator made a handsome bequest of personalty to his wife, and devised to her for widowhood or life, nearly one-third of his lands in acreage, with remainder as to one-third thereof to her and her heirs in fee. He further devised other lands to the children of a deceased son, to be sold by his executors as they might think for the best interest of his children, and his remaining lands to his daughter for life, and at her death to be sold by his executors and the proceeds divided among her children. *Held,* that the equality manifested on the face of this will, and the scheme of division provided for, and the power of sale given to the executors (of whom the widow was one), indicated an intention by testator that the widow's share was in lieu and bar of her dower in the lands given to his issue, and she having accepted the provisions made for her by the will, could not claim such dower. MR. JUSTICE McIVER, *dissenting.*

Before WALLACE, J., Abbeville, June, 1888.

The decree of the probate judge in this case, omitting its statement of facts, was as follows :

Testator has not expressly declared that the devise to his wife was in lieu and bar of dower. Did he intend by the devise to bar her right to dower ? Would the scheme of the will be violated by granting the prayer of petitioner ? Unless this can be fairly gathered from the will, petitioner must prevail. It is ad-

mitted that petitioner has gone into the possession of the devises to her, and has, as it appears by the papers in evidence, receipted to her co-executor for the bequests of personalty, as set forth in the will.

In the consideration of this question we must remember what testator has provided for petitioner by his will ; and first as to the personal property, although there is no valuation placed upon it, yet it is apparently true that the bequest to petitioner is worth more than the share she would have received, provided testator had died intestate, his debts being first paid. The devise to petitioner is for life or widowhood, and if she should die or marry, the lands devised are to be sold, and out of the proceeds petitioner, or her heirs, is to receive one-third, or out of the devise of $1,422 she or her heirs will receive an absolute estate of $474.

What would be the effect of granting dower to petitioner in the devise to Mrs. Robinson ? Hers is an estate for life with remainder to her children. It would be to encroach upon the life estate valued at $1,388 to the extent of one-third, or $347, and add that to the devise to petitioner, which would give her an estate absolute as to $474, and for life for more than $1,800 also. This would be to her advantage over Mrs. Robinson by about $855. Another effect would be, if Mrs. Robinson should die before petitioner, to prevent the vested right of Mrs. Robinson's children from becoming available to them, to the extent of one-third thereof, until the death of petitioner.

Again, the tract which testator directs his executors to sell and divide the proceeds thereof amongst the children of J. W. Callaham, his pre-deceased son, would, if dower is admeasured, or assessed to petitioner out of the proceeds, contribute $336 in value (or $168 in money), which would swell her interest to $1,190 in the aggregate, more than the other shares. This, it is claimed by petitioner, would be only an exercise of benevolence ; and not to allow it would be to defeat the privilege and purpose of testator in disposing of his estate.

I think the law, as presented to us in the case of *Hair* v. *Goldsmith* (22 S. C., 566), must control this case. Indeed, I think the facts of the case at bar are stronger in showing the intention of the testator than in the case cited ; and to accept the devise

and claim the dower is manifestly repugnant to the intention of the testator.

It is held that as petitioner has elected to take the devise and bequests under the will, as shown by her possession and receipts, that she cannot claim both under and against the will. It is further held that testator did not intend that his widow should receive dower in the devises to Mrs. Robinson, and the children of J. W. Callaham, deceased; but that the provision made for her in his will was in lieu and bar of dower. It is therefore ordered, that the petition of demandant herein be dismissed with costs to defendants.

The Circuit Judge sustained this decree and demandant appealed.

*Messrs. Perrin & Cothran*, for appellant.

*Messrs. Benet & Cason*, contra.

*March 1, 1889.* The opinion of the court was delivered by

MR. JUSTICE McGOWAN. Basil Callaham, sr., departed this life on June 5, 1887. He left a widow, Eliza A. Callaham (the demandant), and, by a former marriage, a daughter, Mary J., wife of Hugh Robinson, and three children of a pre-deceased son, John W. Callaham (Carrie Chapman, Basil Callaham, jr., and Julia Callaham). The lands of the deceased consisted of several small tracts as follows: (1) The home place, 186 acres; (2) the Burton place, adjoining the homestead, 30 acres; (3) Scuddy tract, now Lowndesville, 269 acres; (4) part of the Stucky tract, 104 acres; (5) the Shaw parcel, 60 acres; and (6) Hadden tract, 125 acres, making in the aggregate about 774 acres. By his last will and testament, which is in the Brief, he provided as follows: First. After making a handsome bequest to his wife of such personal property as was necessary to make her comfortable,[1] he devised his lands as follows: "I give and be-

---

[1] This provision of the will was as follows:

"3d. I also will and bequeath to my beloved wife, Elizer A. Callaham, the following property for her own use and to do as she sees proper with, namely, two first choice feather beds, bedsteads, and furniture, and one

queath to my beloved wife, Eliza A. Callaham, my home tract of
land, containing 186 acres, also a tract of land adjoining, known
as the Burton tract, containing about 30 acres, to have and to
hold, to use and possess during her natural life or widowhood,
but in the event that she should marry, or if she lives single until
she dies, in either case it is my will that the above named land be
sold by my executors   *   *   *   and the proceeds of the sale of
the land be divided in the following manner : One-third to her or
her heirs, one-third to the children of my son, John William Cal-
laham, now dead, and one-third to my daughter, Mary Jane Rob-
inson, or if she be dead, to her children that may be living, all
to share and share alike."

The testator gave to the children of John W. the "Scuddy"
place, 268 acres, to be sold at such time and in such manner as
his executors might think for the best interest of the children,
the proceeds to be equally divided among the children, all to
share and share alike.   He also gave to Mrs. Robinson three
small tracts, the Stucky parcel, 104 acres, the Shaw parcel, 60
acres, and the Haddon tract, 125 acres, during her natural life ;
and at her death to be sold by the executors and the proceeds
equally divided between her children, share and share alike. The
will directed that the residue, if any, should be equally divided
between Mrs. Robinson and the children of John.

The widow, Eliza A., was named one of the executors, and
qualified as such.   She accepted the provisions of the will in her
favor, and afterwards instituted these proceedings in the probate
court of Abbeville—one case against the children of John W.,
deceased, and the other against Mary J. Robinson—demanding
dower in all the lands of which her husband died seized and pos-
sessed, except what was given to herself.   The probate judge,
after argument, held that although the testator did not expressly

first choice mattress, the sitting chairs in the house, one Wheeler & Wilson
sewing machine, the cupboard and dishes, knives and forks, such as she
may make choice of; also two first choice horses, two first choice cows and
calves, one first choice sow and pigs, and five first choice shoats ; also one
wagon, one buggy and harness, one cotton-gin and running gear, one cook-
ing stove and stove vessels; also one year's provisions for herself and
stock."

declare that the provision made for his wife was in lieu and bar of dower, the whole will, properly construed, shows that such was his intention, its provisions being manifestly inconsistent with the claim of dower, in the lands devised to the children of John W. and Mrs. Robinson—citing the case of *Hair* v. *Goldsmith* (22 S. C., 566), with the remark that as to the intention of the testator, "that case was not as strong as this." He dismissed both cases.    The demandant appealed to the Court of Common Pleas, and Judge Wallace affirmed the decree and dismissed the appeal.

The case is now before us on appeal upon the following exceptions : "I. That the probate judge erred in admitting the appraise bill of the estate of Basil Callaham, deceased, in evidence. II. In holding that the claim of dower is manifestly repugnant to the intention of the testator.    III. In holding that the provision made for the widow in the will was in lieu and bar of dower.    IV. In dismissing demandant's petitions.    V. In holding it to be apparently true that the bequest to petitioner is greater than she would have received if testator had died intestate.    VI. In holding that this is a case where the widow was called upon to make her election.    VII. In stating that the devise to Mrs. Robinson was 191 acres, whereas the will devises to her 289 acres," &c.

As to the last exception, we think there must be some mistake, as we have not been able to find in the "Case" any such statement as that attributed to the probate judge in reference to the number of acres devised to Mrs. Robinson.

It seems that the record of administration of the testator's estate in the office was considered by the probate judge to be in evidence, showing that the demandant had accepted and taken possession of the provision made for her by the will, including also the appraisement of the property of the estate, from which it appeared that the value of the lands given to the three devisees (the children of John W. representing their father) were about equal—the value of the widow's share being slightly greater than that of either of the children.    But it nowhere appears that the probate judge rested his decision on that evidence, but, on the contrary, upon the provisions of the will itself, considered as a whole.

The right to dower is undoubtedly a clear legal right, but it is peculiar in this, that it is inchoate until the husband's death. While it is beyond the control of the husband, he may give property as a substitute for it, which, if accepted, bars the right. If the testator expressly declares that a provision for his wife is intended to be "in lieu and bar" of her dower in his lands, there can be no difficulty, for a case of election has been created, and the widow may take the provision made for her or dower, but not both. When, however, there is no such express declaration, the intention can only be reached by construction, and as that must depend upon the peculiar provisions of each will, there has been much discussion, and possibly some difference of opinion, as to what is necessary to exclude the right.

While each case must be decided upon its own facts, we think the proper rule to be observed in determining the question was stated by the Chief Justice in the case of *Hair* v. *Goldsmith* (22 S. C., 566), cited both by the probate and Circuit Judge. He said : "There is no express declaration in this will that the devise to his wife was in lieu and bar of dower ; the question, then, is presented, did the testator intend this devise as such bar ? This must be determined by the fact whether the two are so manifestly repugnant that they cannot stand together. This being determined, the intention of the testator is reached and must govern," &c. Now, applying this principle, how does this case stand ? It seems to us that the provisions of the will, considered together, show that the testator had in his mind a settled scheme for the division of his property among his wife and two children, which was based on the view (as he was providing a substitute for the dower) that he had the absolute right to dispose of the property as his own—the whole interest in it—without taking further account of his wife's inchoate right to dower in his lands ; and this being the case, the operation of such right now would inevitably derange and destroy that scheme, by increasing the share he intended for his widow, and reducing those he intended for his children, respectively.

It will be observed that the testator disposed of, by his will, several small tracts of land, aggregating in quantity about 774 · acres. The third of this (the full extent of the dower interest)

would be about 258 acres. The will shows that, besides a handsome legacy of personalty, the testator gave his wife the homestead and the little "Burton place" adjoining, 216 acres, which, of course, carried the improvements on the homestead. This was given for life or widowhood. If she married again, or at her death without marriage—in either case the lands were to be sold and the proceeds distributed, one-third to her or her heirs for ever, and the same to each of his children. Is it not quite clear, without any reference to extrinsic evidence, that this provision alone, nearly one-third in mere acres, was at least equal in value to her dower interest; and if so, does not the character of the property given (the homestead), as well as the manner in which it was given, indicate unmistakably that he intended the provision to be a substitute for and in lieu and bar of her legal right to dower in his lands? We cannot doubt it.

As to the exception that the "appraise bill" was not competent evidence as to the value of the different parcels of land, it will suffice to call attention to the familiar doctrine, that a decree will not be reversed if it can be sustained upon any ground which appears in the record. *Coleman* v. *Chester*, 14 S. C., 296; *Weinges* v. *Cash*, 15 S. C., 44.

It will be further noticed that the lands devised to the children of John W., were directed to be sold "at such time and in such manner as my executors may think will be for the best interest of my children." It was clearly the intention of the testator that the whole lands should be sold for the best interest of the children, and not what might remain after one-third by metes and bounds had been assigned to the widow as her dower. Besides, that sale was directed to be made by the executors, of whom the demandant is one. The claim of dower in the lands by her would be not only repugnant to the intention of the testator, but absolutely inconsistent with her sworn duty, as one of the executors, to sell the land at such time as would be "for the best interest of the children." Substantially the same may be said as to lands devised to Mrs. Robinson, which, at her death, the executors are directed to sell and divide the proceeds among her children. Upon the whole we concur with the probate and Circuit Judges, that the allowance of dower to the demandant in these

cases would be inconsistent with the provisions of the will and manifestly repugnant to the intention of the testator.

The judgment of this court is, that the judgment of the Circuit Court in both the cases stated be affirmed, and that they be remanded to the probate court for such orders as may be necessary to carry out the conclusion herein announced.

MR. CHIEF JUSTICE SIMPSON concurred.


MR. JUSTICE MCIVER, *dissenting.* Not being able to concur in the conclusion reached by the majority of the court in these cases, I propose to state as briefly as practicable the reasons for my dissent.

According to all the text-writers, as well as the cases upon the subject, dower is a highly favored right, which, inchoate during coverture, becomes a vested *estate* in the wife immediately upon the death of her husband, over which he has no more control than he has over the wife's estate of inheritance, or any other separate estate to which she may be entitled. Hence, when a husband undertakes to devise his real estate, it must be presumed that such devise is made subject to his wife's right of dower, as it would be absurd to presume that he intended to dispose of that over which he has no control. But while these principles are universally recognized, the law also recognizes the power of the husband, by proper provisions for that purpose in his will, to put his wife to her election, whether she will take the provision made for her in the will, or insist upon her legal right of dower; and if, in such a case, she elects to take the provision made for her in the will, she loses her right of dower, not by any act of her husband, but only by reason of her voluntary surrender of such right. This is upon the principle that the provision in the will is regarded as made upon the condition that she will surrender her right of dower, and she is not permitted to accept the provision without complying with the condition.

It is, however, well settled that to put a wife to her election it must appear on the face of the will, either in express terms or by necessary implication, that the testator intended to annex as a condition to the provision made for the wife that she should surrender her right of dower. As is said by Lord Redesdale in

*Birmingham* v. *Kirwan*, 2 Scho. & Lef., at page 452: "It is, however, to be collected from all the authorities, that as the right to dower is, in itself, a clear legal right, an intent to exclude that right by voluntary gift must be demonstrated, either by express words or by clear and manifest implication. If there be anything ambiguous or doubtful, if the court cannot say that it was clearly the intention to exclude, then the averment that the gift was made in lieu of dower cannot be supported; and to make a case of election that is necessary, for a gift is to be taken as pure until a condition appears. This I take to be the ground of all the decisions."

So in *Gordon* v. *Stevens* (2 Hill Ch., 46), Johnson, J., after affirming the rule thus laid down by Lord Redesdale, adds: "and this implication must arise from some provision in the will inconsistent with the assertion of the claim." In *Cunningham* v. *Shannon* (4 Rich. Eq., at page 140), Dargan, Ch., in his Circuit decree, which, upon this point, was affirmed by the Court of Appeals, says that every devise which a testator makes of land, upon which the right of dower attaches, "is presumed to be given subject to the legal estate (of dower), unless the contrary appears, on the face of the will in express words, or by the strongest kind of implication." To the same effect see *Adsit* v. *Adsit* (2 Johns. Ch., 448), where Chancellor Kent reviews the authorities. See, also, the dissenting opinion of Dargan, Ch., in *Bailey* v. *Boyce* (4 Strob. Eq.; 92), which, of course, is not referred to as authority, but simply because it presents a more thorough review of the authorities than I have been able to find in any other case.

Now, to apply these well settled and, as I understand it, undisputed principles to the case under consideration. Inasmuch as it is quite certain that there are no express words in the will indicating the testator's intention that the provision made for his wife should be in lieu of her claim of dower, the real inquiry is whether such intention must necessarily be implied from the provisions of the will, read as a whole—for that is the proper mode of ascertaining the intention of a testator. So far as I have been able to discover, the cases do not furnish us with any general rule upon this subject, but each case must be governed by

the particular provisions of the will which is under consideration. The cases, however, on the one hand, do furnish us with instances in which certain provisions have been held insufficient to afford a necessary implication of an intention to put the wife to her election; while, on the other hand, there are cases which furnish instances in which particular provisions have been held to afford such a necessary implication.

As illustrations of the first class may be mentioned the case of *Gordon* v. *Stevens* (2 Hill Ch., 46), where the claim of dower was allowed, notwithstanding it was insisted, in one of the grounds of appeal, that the allowance of such claim would defeat the equality which would otherwise exist between the provisions made for the widow and the children; and where it was held that a devise of lands to trustees to sell, or with directions to the executors to sell, would not defeat the claim of dower, as such devise is understood to pass the real estate subject to the claim of dower. So, also, the case of *Adsit* v. *Adsit, supra*, as to the effect of a devise with directions to the executors to sell, where Chancellor Kent uses this strong language: "All the cases, however irreconcilable they may be in other respects, agree in this, that a devise of the lands to trustees to sell, or a direction to the executors to sell, is understood to pass the estate subject to dower," and in that case the claim of dower was allowed, notwithstanding such a devise, as well as the provision made for the wife by the will. So, too, the case of *French* v. *Davies* (2 Ves., 572), where a devise *to the wife* and others to sell was held insufficient to put the wife to her election.

As illustrations of the second class, may be mentioned the case of *Bailey* v. *Boyce* (4 Strob. Eq., 84), where a testator gave to his wife and an only daughter each one moiety of all his estate, both real and personal, and it was held that the claim of dower should be rejected as inconsistent with the provisions of the will, and conflicting with the evident intention of the testator to make an equal partition of his property. So, also, the case of *Hair* v. *Goldsmith* (22 S. C., 566), where a testator devised four-tenths of all his real estate to his wife for life, with remainder to her daughter, three-tenths to the children of his son, and the remaining three-tenths to the children of another daughter, and it was

held that this provision for the wife was inconsistent with her claim of dower. It will be observed that in both of the cases last cited, the devises were of *undivided* fractional portions of testator's real estate, and not devises of separate and distinct parcels of land, and hence the land devised passed to the devisees as co-tenants, each being seized *per my* and *per tout* of the entire premises; and, therefore, the widow's seizure by virtue of the devise, extending over every part of the land, was inconsistent with her claim of dower. It seems to me, that it is upon this principle alone that these two cases can be made consistent with the numerous authorities cited in the cases above referred to. This principle, however, cannot be applied in the present case, for here the devisees do not take as co-tenants, but, on the contrary, separate and distinct tracts of land are devised to each, and none of the devisees has any interest or share, by the terms of the will, in the tracts devised to the others.

I am unable to discover anything in the terms of this will which necessarily implies that the testator intended to put his wife to her election. Such an intention cannot be implied from the fact that the devisees take as co-tenants, for such is not the fact. It cannot be implied from the directions to the executors to sell, as is seen by the cases of *Gordon* v. *Stevens, Adsit* v. *Adsit*, and *French* v. *Davies*, above referred to. It certainly cannot be implied from the fact that the allowance of dower would reduce the value of the devises to the other devisees, for that happens in every case; and I think the assertion may be safely ventured, that not a single case can be found in which that fact has been regarded as sufficient, but, on the contrary, such an idea has been distinctly repudiated in many cases. *Whilden* v. *Whilden*, Riley Ch., 208; *Braxton* v. *Freeman*, 6 Rich., 35. In fact, every case in which dower has been allowed, in addition to the provision of the will, necessarily repudiates such an idea.

And, finally, it certainly cannot be implied in this case, from the fact that to allow the dower would disturb the equality provided for in the will, for the simple reason that no such equality is there provided for. So far as I can discover, there is not a word or phrase in the will which warrants the inference that the testator intended to make an equal division amongst his wife and

children or grandchildren.   He simply gives to her certain spe-
cific property, and certain other specific property to his children
and grandchildren, without the slightest intimation as to what he
regarded the value of such devises or bequests.   Even the num-
ber of acres of the several tracts of land devised to the several
beneficiaries is not equal, and there is nothing whatever to show
that the idea of equality was present in the testator's mind at the
time he was making his primary dispositions.   But when he comes
to dispose of the remainders after the life estates created, the
intention of equality was not only entertained, but plainly ex-
pressed—showing that when testator intended equality, he took
care to so express his intentions.

   The idea, therefore, that the testator intended to make the
provision for his wife equal to those made for the other objects of
his bounty, most certainly cannot be derived from the terms of
the will ;   and if it have any foundation at all, it must rest upon
extraneous evidence.   Assuming, for the purposes of this case
only, that such evidence would be competent, let us inquire into
the nature of the evidence adduced.   So far as the record sub-
mitted to us shows, the only evidence submitted on this point was
what is called in the decree of the judge of probate, "the ap-
praise bill of testator's estate," in which the value of the two
tracts of land devised to the wife during life or widowhood is set
down at                                                    $1,422 00
The value of the 3 tracts to Mrs. Robinson at              1,388 00
The value of the tract to children of John at              1,345 00

   By what authority these appraisers undertook to put a valua-
tion upon the *real* estate of the testator, it is difficult to conceive.
The will did not direct any such valuation, and their authority,
under the statute, was confined to an appraisement of the *personal*
estate.   Their act, therefore, in making this valuation of the real
estate was clearly unofficial, and must be regarded as simply the
estimate of private individuals, and as such "the appraise bill"
was clearly incompetent evidence in this case for any purpose.
It seems to me, therefore, that upon this ground, even if there
were no other, the judgment below should be reversed.

   It is said, however, that the judge of probate does not appear
to have rested his decision upon this evidence; and hence, I sup-

pose, even if the evidence was incompetent, it was immaterial and did not affect the result. With all deference, it seems to me this is a mistake. The decree of the judge of probate is set out in the "Case," and in that decree he says this "appraise bill" was in evidence, and, upon the valuations of the several tracts therein found, he proceeds to make a calculation for the purpose of showing that to allow the widow dower, in addition to the provision made for her in the will, would give her great advantages over the other devisees. What influence this may have had in inducing the conclusion to which the judge of probate arrived, I shall not undertake to conjecture. I find it in his decree apparently as one of the reasons for his conclusion, and feel bound so to regard it. What view the Circuit Judge took of this matter does not appear, as he simply affirmed the decree of the judge of probate in a short order, without alluding to this question—basing his conclusion upon the case of *Hair* v. *Goldsmith, supra.*

But even if this testimony should be regarded as competent, it seems to me that, so far from showing that the testator intended equality amongst the objects of his bounty, it shows exactly the reverse. What was the value of the testator's personal estate does not appear, nor is the value of the personalty bequeathed to the widow shown by any evidence whatever. The judge of probate says in his decree: "As to the personal property, although there is no valuation placed upon it, yet it is apparently true that the bequest to petitioner is worth more than the share she would have received provided testator had died intestate, his debts being first paid." If there was no valuation placed upon the personal property, it is difficult to conceive how it could appear that the bequest to the widow was of greater value than her share would have been if her husband had died intestate, especially as the record furnishes no intimation even as to the amount of testator's debts. But waiving this, and taking the valuation of the real estate as set down in the "appraise bill," there is no equality either in the number of acres or in their value. But when, in addition to this, it is seen that, by the terms of the will, the tracts of land devised to the widow are only given to her during widowhood, and that she acquires by such devise an absolute estate in only one-third thereof, or about one-ninth of the entire value of

the real estate, it would seem to be conclusive that the idea of equality was not in the mind of the testator.

It seems to me, therefore, that in no view of the case can the petitioner be deprived of her right of dower by the provision made for her in the will; and that the result of this decision, from which I have ventured, with great deference, to dissent, will be to establish the rule, that whenever a husband, by his will, makes provision for his wife, this, if accepted, will exclude her right of dower.

Judgment affirmed.