### 6860

OTTS *v.* OTTS.

OTTS v. OTTS.

OTTS v. OTTS.

OTTS v. ALLEN.

DOWER—WILLS.—A devise to the wife of a small tract of land "for life or widowhood," separated from a devise in consideration of debt by a period, and connected with it by the word "also," *held* to be not in consideration of a debt; and the acceptance of the devise under the will *held* not to bar the wife of dower in other large tracts of land than those devised for life and for debt.

Before PRINCE, J., Spartanburg, June, 1906, Affirmed.

Four cases, Laura A. Otts against R. J. Otts, same against J. C. Otts, same against C. M. Otts, same against Nannie M. Allen, in Probate Court for dower. From circuit order confirming judgment of Probate Court, defendant in each case appeals.

*Messrs. Simpson & Bomar,* for appellants, cite: 16 S. C., 626; 22 S. C., 568; 30 S. C., 258; 37 S. C., 531; *Bostick* v. *Barnes,* 59 S. C.

*Messrs. Nichols & Jones,* contra, cite: 43 S. C., 434; *Bannister* v. *Bannister,* 37 S. C.; 4 Rich. Eq., 145; 34 S. C., 85; *Stoke* v. *Norwood,* 44 S. C.; *Geiger* v. *Geiger,* 57 S. C.; 29 S. C., 507.

April 11, 1908. The opinion of the Court was delivered by

MR. JUSTICE JONES. These proceedings were instituted by petitioner for dower in four tracts of land containing in the aggregate about nine hundred acres, now owned by defendants separately.

R. M. Otts, husband of petitioner, died testate on the 21st day of September, 1894, seized and possessed of a tract of land containing eighty-eight acres, known as the Andy Wofford tract, a two-thirds undivided interest in two tracts, known respectively as the Mill and Betty King places, and the four tracts embraced in the nine hundred acres out of which dower is sought.

He left surviving him his widow, Laura A. Otts, petitioner, and five children, R. J. Otts, J. C. Otts, C. M. Otts, Nannie M. Otts (now Allen), and Lily C. Otts. Of these Lily C. Otts died in 1898 or 1899, and the others are defendants herein. In the year 1901, soon after C. M. Otts, the youngest child, attained his majority, the nine hundred acre tract was divided according to the terms of the will of R. M. Otts, among the four defendants, his surviving children.

The sections of the will pertinent to this case are:

2nd. "I do hereby will, give and bequeath unto my beloved wife, Laura A. Otts, one horse or mule, one cow and calf, one buggy and harness, one one-horse wagon, farming tools for a one-horse farm, and in addition to the above I give her, 'my wife,' five shares of Merchants and Farmers' Bank stock I hold, and one-sixth of my interest in the Mill or Betty King places, when my executors dispose of the same, in consideration of money she has let me have heretofore. Also I give to her one tract of land whereon Andy Wofford now lives, known as lot No. 4 of the S. C. Miller lands, containing 88 acres, more or less, during her natural life or widowhood and at her death, or should she marry again, then I desire the said tract of land to be sold and the proceeds equally divided among my children.

3d. "It is my will and wish that my family stay together as much as possible, and receive their support from my estate.

4th "It is my will and wish that my two youngest sons, viz.: Christmas M. Otts and J. Coan Otts, be educated at the expense of my estate equal to my oldest son, R. J. Otts.

2—80

5th. "It is my will and wish that when my youngest son, Christmas M. Otts, becomes twenty-one years old, that all of my estate, both real and personal, except what is known as the Mill and Betty King places, be equally divided between my children, viz.: Lily C. Otts, Nannie M. Otts, Robert J. Otts, J. Coan Otts and Christmas M. Otts, this to be done by three discreet persons chosen by my executors and under the conduct of my executors. My interest in the Mill and Betty King places, which is two-thirds of the whole, I desire my wife and children to own jointly after my youngest child, Christmas M. Otts, becomes twenty-one years of age, until such time as they may all agree with my sister and sell those two tracts to the best advantage, and between them, viz.: my wife, Laura A. Otts; Lilly C. Otts, Nannie M. Otts, Robert J. Otts, J. Coan Otts, Christmas M. Otts; my wife's share I give to her in consideration of moneys she has let me have heretofore, the same being understood by me and her."

Defendants contended before the probate court that petitioner, having elected to take the life estate given her by the will in the Andy Wofford tract, could not claim dower in the other lands. The probate court held that "all of the property given to the widow in item two is expressly given to her in lieu of money testator owed his widow, except the part of said item devising to her the Andy Wofford or lot No. 4, and the part devising that tract is susceptible of the construction that this, too, has been given in lieu of debt. So that there is nothing in this item that would bar her of her dower." The probate court further held that nothing in item 5 would bar dower, since Mrs. Otts' share was expressly given in lieu of debt.

The Circuit Court, on appeal, sustained the decree of the probate court. The appeal to this Court raises practically one question, whether the devise to the petitioner in the will was intended to be in lieu of dower, as claimed in this case.

The principles of law by which this case must be decided are so fully and clearly stated in *Summerel* v. *Summerel,* 34 S. C., 85, 88, 12 S. E., 932, that we quote at length therefrom:

"The right of dower being an estate which vests in the wife immediately upon the death of the husband, over which he can exert no control whatever, either by will or otherwise, it follows that no provision which he can make in his will can, *of itself,* defeat the claim of dower. Where, however, the husband has, either in express terms or by necessary implication, declared that the provision made for his wife is intended to be in lieu of her claim of dower, then a case of election is presented, and if the wife accepts the provisions made for her in the will, her claim of dower is defeated, not by the act of the husband, but by her own act. In such a case she cannot take both, and if she elects to accept the provisions of the will, she thereby renounces her claim of dower. But as the husband has no power to dispose of his wife's estate of dower, the presumption always is that when he makes a devise of real estate, such devise is subject to the wife's right of dower, and hence the burden is upon those who seek to deprive her of such right to show that the terms of the will are such as necessarily imply that the intention was that she should not take both dower and the provisions made for her in the will.

"Inasmuch as it is manifest that the will now under consideration contains no express declaration that the provision therein made for testator's wife was intended to be in lieu of dower, the inquiry is narrowed down to the question whether such intention must necessarily be inferred from a consideration of all of the provisions of the will, read in the light of the circumstances surrounding the testator at the time. The test of this is said, in *Hair* v. *Goldsmith,* 22 S. C., 566, and approved in *Callahan* v. *Robinson,* 30 S. C., 254, 9 S. E., 120, to be whether the provision in the will

and the claim of dower are so manifestly repugnant that they can not stand together. Testing this case by this rule, we see no repugnance whatever. The allowance of the claim of dower will not prevent any of the devises contained in the will from going into effect. Indeed, the only possible effect it could have upon any of the devises would be to reduce their value, and that has never been sufficient to warrant an inference that the intention was to exclude the right of dower, for that happens in every case where dower is allowed. See *Whilden* v. *Whilden,* Riley Ch., 208; *Braxon* v. *Freeman,* 6 Rich., 36-7. The intention to exclude the dower can not be inferred from the fact that the devisees take as tenants in common, as in *Hair* v. *Goldsmith,* 22 S. C., 566, for they do not so take under this will. Nor can it be inferred from the direction to sell the lands out of which the dower is claimed. *Adsit* v. *Adsit,* 2 Johns. Ch., 448; *French* v. *Davies,* 2 Ves., Jr., 572; *Gordon* v. *Stevens,* 2 Hill Ch., 46. Nor can it be inferred from the fact that it would disturb the scheme of equality, as in *Callahan* v. *Robinson,* 30 S. C., 249, 9 S. E., 120 (which the majority of the Court in that case found manifested in the will); for here the will shows no such scheme, except as to the distribution of the proceeds of the property directed to be sold, which under the authorities above cited (*Gordon* v. *Stevens, Adsit* v. *Adsit*) must be regarded as a sale subject to claim of dower."

As to the Mill and Betty King tracts, it is clear that the testator devised an interest in the same to petitioner in consideration of his debt to her, and this negatives the idea that he intended such devise in lieu of dower in the Home Place, and she is not claiming dower in the Mill and Betty King tracts.

As to the devise of the Andy Wofford tract. we incline to think this was not intended to be in consideration of the testator's indebtedness to petitioner, as held by the probate

and Circuit Courts. This clause is fairly. separable from the preceding clause. It is, in fact, separated therefrom by a period, although no great stress is generally placed upon mere punctuation in the construction of wills. The fact that this clause begins with the word "also" does not necessarily indicate that the devise was to be in consideration of debt, as in the preceding clause, but is perfectly consistent with the intent merely to make a further devise to her, but not associated with the idea of discharging indebtedness. Whenever the testator meant to couple the gift or devise with the desire that it be taken in satisfaction of his debt he made his intention to that effect clear, as will also appear by reference to the fifth item, wherein it is repeated that the interest given his wife in the Mill and Betty King places is in consideration of moneys which the wife had let him have.

But, conceding this to be the proper construction of the will, the inquiry is whether petitioner has elected to take said devise under the will, and, if so, whether the acceptance of said devise is so repugnant to the scheme of the will as to bar the claim of dower herein.

We find no clear or definite evidence in the case that petitioner has accepted the Andy Wofford place under the terms of the will, but, conceding that she has, it is not inconsistent with nor repugnant to the scheme of the will that she should claim dower, not in the Andy Wofford and the Mill or Betty King tracts, but in the Home Place. This provision for the wife in the will, beyond what was given her in consideration of debt, seems very small in comparison with the provision in behalf of the other beneficiaries, so that it can not be said that there was any scheme of equality among the beneficiaries to be disturbed by allowing the petitioner dower in the Home Place. All the devises in the will may take effect consistently with the claim of dower in the home tract, for, as shown in *Summerel* v. *Summerel, supra,* the only effect the allowance of dower in the Home Place would be merely to reduce their value, which is not

sufficient to show intention to exclude dower.    There is no tenancy in common created by the will, except as to the Mill and Betty King tracts; but as to these tracts, as has been shown, the idea that they were given in lieu of dower is excluded by the express statement in the will that it was given in consideration of debt.    It is true the acceptance of the Andy Wofford place during widowhood or life may be inconsistent with a claim of dower therein, but in view of the smallness of this devise, in comparison with the value of the dower in that and the Home Place, it can not be said to be manifestly repugnant to claim of dower in the Home Place.

The exceptions are overruled and the judgment of the Circuit Court is affirmed.