# Lockhart's Guardian v. Bailey Pond Creek Coal Company.

(Decided June 20, 1930.)

G. R. BLACKBURN and R. O. FOX for appellant.

GOODYKOONTZ & SLAVEN for appellees.

OPINION OF THE COURT BY COMMISSIONER STANLEY—Reversing.

To defeat recovery of compensation under the Workmen's Compensation Act by the appellant, Helen Lockhart, through her guardian and next friend, the appellee Bailey Pond Creek Coal Company interposed the defenses that: (1) She was not the recognized illegitimate child of the deceased employee; (2) was not living with him or actually dependent upon him when he met his death; and (3) limitations. The Compensation Board disallowed the claim, and its action was approved by the circuit court on a petition for review.

On November 8, 1916, Octavia Nichols, then fifteen years old, married Grover C. Bevins and they moved to St. Louis. He was there sent to the penitentiary for some crime and his wife returned to her parents' home in Pike county, Ky. Without having been divorced, on December 14, 1920, a marriage ceremony was performed for Mrs. Bevins and James Lockhart and they lived together as husband and wife in Chattarey, W. Va., until some time in April, 1921, when Bevins, having been released from the Missouri penitentiary, also came back to Kentucky. Upon finding his wife living with Lockhart, he started trouble, and in fear of him she went to her parents' home on Turkey creek, in Pike county, Minnie Runyon sister of Lockhart, says this was in May. Divorce proceedings were instituted against Bevins, it being the plan of Mrs. Bevins and Lockhart to marry when the divorce had been obtained. Lockhart was bearing the expense of the suit.

On January 24, 1922, a child was born to Mrs. Bevins, which she named Helen Lockhart. She was attended in childbirth by a midwife, but Lockhart sent a physician to see her. He also sent some clothing for the child, and several times asked his sister to take the child and raise her for him. When she agreed, Lockhart said he would go and get the child, but was killed before

he did so. About two months after the birth of this child Lockhart was killed in a mine of the appellee company without ever having seen the child, because, as it is explained, he was afraid to visit his bigamous wife in fear of her husband. About four months after Lockhart's death, Mrs. Bevins returned to live with her husband. Two years later, after Bevins had left her, the mother gave this child to Mrs. Runyan, Lockhart's sister, because she was not able to take care of her and the three children who had been born while she lived with Bevins.

On November 18, 1922, the company filed its petition with the Compensation Board asking for a hearing and an award as to its liability for Lockhart's death. Liability having been established, on June 29, 1923, the company paid the father and administrator of the estate of Lockhart $100. It also paid $75 for burial expenses. Those are the sums payable where there is no dependent. Section 4893, Statutes.

Six and one-half years after Lockhart's death a claim was filed by the child, Helen Lockhart, by her next friend, Minnie Runyon, as his recognized illegitimate child. The Compensation Board denied the application on the ground that the child was not living with or being supported by the employee at the date of his accident. The ground upon which the circuit court approved the disallowance does not appear in the record, but we are informed by counsel in brief that it was for the reason that he considered the claim barred by limitation.

1. Without objection Mrs. Bevins testified unqualifiedly that the child was Lockhart's; and the evidence shows that he certainly recognized and considered her to be his.

To sustain the denial that the child was Lockhart's the company invokes the familiar presumption that a child born in wedlock is that of the husband, and the fact that Mrs. Bevins and Lockhart ceased living together as husband and wife some time in April, nine months before the birth of the child. The proven circumstances do not overcome the factual evidence destroying the legal presumption of legitimacy. They refute, rather than sustain, the idea that the relations between Mrs. Bevins and her husband were such as prove him to be the father of her child.

The board upon abundant evidence found as a fact that Lockhart was her father, and we are bound by that finding.

2. Section 4895 of the Statutes, a part of the Workmen's Compensation Act, provides that the term "child" includes "recognized illegitimate child;" and section 4894 declares that a child under the age of sixteen years shall be presumed to be wholly dependent "upon the parent with whom such child or children are living or by whom actually supported at the time of the accident." This section has been construed in Jones v. Louisville Gas & Electric Company, 209 Ky. 642, 273 S. W. 494; and in Ramey v. Portsmouth By-Product Coke Company, 234 Ky. 75, 27 S. W. (2d) 415. The facts in this respect being undisputed, the finding of the board that the child was not being actually supported by Lockhart is one of law, which is subject to consideration by the court without the qualification with respect to a finding of fact. Bates & Rogers Construction Company v. Allen, 183 Ky. 815, 210 S. W. 467; January-Wood Company v. Schumacher, 231 Ky. 705, 22 S. W. (2d) 117.

It is difficult to see what other support the father could have furnished. He sent a physician to see the mother and child, and about a week after her birth sent her some clothing. He secured the promise of his sister to take care of his baby for him. She was being nursed by her mother and needed nothing else during the two months of his life. It is argued, somewhat sophistically, that since the deceased was not supporting the mother who was nursing the child at her breast, he was not supporting the child. We cannot follow reasoning so attenuated, for when a father recognizes his duty to his infant and does for it all that is reasonably required of him, he is actually supporting it within the meaning and purpose of the law. It may be noticed that there is an incongruity in providing as an essential condition to a recovery of compensation by a posthumous child that he should be living with or actually supported by the employee at the time of his death. That may at some time present an interesting question. We conclude that the facts shown were sufficient to entitle the appellant child to be classed as a dependent under the statutes.

3. Consideration of the question of limitation involves sections 4914 and 4919 of the Statutes. The former section provides that no proceeding for compen-

ꞩation shall be maintained unless notice of the accident shall have been given and claim made within one year after the date of the accident or death. When the employee in this case met his death, section 4919 was as follows: "No limitation of time provided in this act shall run against any person who is mentally incompetent or who is a minor dependent so long as he has no committee, guardian or next friend."

There was added in 1924 (Laws 1924, c. 70, sec. 6): "Or other persons authorized to claim compensation for him under section 4909 of this act."

Section 4909 is as follows:

"The benefits in case of death shall be *paid* to such *one or more dependents* of the deceased employee *for the benefit of all* the dependents entitled thereto, as may be determined by the board. The dependents to whom payments are made shall apply the same to the use of the several persons thereto entitled under this act according to their respective claims on the deceased for support. The compensation of an insane person shall be paid to his or her committee.

"In cases where the dependents are a widow or other head of a family of minor children and one or more minor children, it shall be sufficient for the widow or head of such family to make application for compensation on behalf of all, and *in cases where the dependents are* mentally incapacitated or are *minors* the head of whose family is *not* a dependent, the application may be made by the committee, guardian, or *next friend* of such dependents."

It is admitted by all that the mother of this child was not a "dependent" within the meaning of that term. The child had no guardian or next friend during the period intervening between the death of her father and the filing of this claim. It is submitted, however, that the phrase "other head of a family of minor children" comprehends Octavia Bevins, the mother of the child, or her aunt who became her foster mother; that while neither was a dependent of the employee who should divide compensation allowed minor dependents, each was actually the child's next friend, for she was the person who held that natural relation to the infant and who

might be expected to act in that capacity. Again, we are unable to sustain counsel's reasoning. The term "next friend," being combined with "committee and guardian," must under the familiar rule of ejusdem generis be construed as a representative of like character; that is, one authorized to bring and maintain an action for and in the name of another who is non sui juris.

In Ashland Iron & Mining Company v. Fowler, 208 Ky. 422, 271 S. W. 589, 591, this section of the Statutes was construed as constituting a dependent widow, or dependent head of the family receiving compensation, a statutory next friend for the minor dependents for the purpose of obtaining the death benefits provided by the act. But it was clearly shown that unless the dependency existed in the adult it was necessary that the infant or incompetent dependent have a legal next friend for the purpose of making the claim. We may repeat that "we know of no rule of law or statute providing for the appointment of a standing next friend, analogous to the appointment of a committee or guardian." It was also established in that opinion that the period of limitation was tolled during such time as there was no committee, guardian, or next friend.

The court is of the opinion that the appellant is entitled to recover compensation under the act, and the judgment is therefore reversed for consistent proceedings.

Whole court sitting, except Judge DIETZMAN who was absent.