## Cairel v. Hall-Luton Coal Company et al.

(Decided March 25, 1932.)

VERT C. FRASER for appellant.

GORDON, GORDON & MOORE for appellees.

OPINION OF THE COURT BY JUDGE REES—Affirming.

The appellant, Curtis Cairel, was injured on May 11, 1927, while in the employ of appellee Hall-Luton Coal Company, in an accident that arose out of and in the course of his employment. Both employer and employee had accepted the provisions of the Workmen's Compensation Act (Ky. Stats., sec. 4880 et seq.). After appellant had received $105 in payments at the rate of $15 a week, a dispute arose as to the extent of his injuries and the amount of compensation due. On August 13, 1927, appellant filed with the Workmen's Compensation Board an application for the adjustment of his claim for compensation in which he described the nature of his injuries as follows:

"His right shoulder was severely injured; his left side was injured; his back was injured and the muscles of his back severly injured—ruptured or torn loose from ribs and backbone, and practically the whole of his body was injured."

At a hearing before a member of the board an award was entered for compensation for temporary total disability from May 11, 1927, to November 18, 1927, and for 10 per cent permanent partial disability thereafter. A motion was filed for a review of the award by the full board. On March 20, 1928, an order was entered sustaining the award theretofore made. Appellant then filed his petition in the Webster circuit court for a review of the award, but the circuit court refused to disturb the award and dismissed the petition.

At the hearing before the board five physicians were introduced as witnesses for the appellant. Two of these physicians testified that his injuries as related to the work in which he was employed when injured (operating coal-cutting machine) impaired him 25 per cent. The remaining three physicians introduced by appellant testified that in their judgment appellant's injuries were permanent and impaired him 50 per cent or more. Four physicians were introduced as witnesses for appellee, and they placed the impairment of appellant's ability to labor at from 8 to 15 per cent.

On January 21, 1929, appellant filed with the Workmen's Compensation Board an application to reopen the case. The grounds relied upon as set out in his application are as follows: "The purpose of this application is

to re-open the case. Applicant was adjudged by board ten per cent partial permanent disability and he now states that there has been a change in his condition and he now has a partial permanent disability of seventy-five per cent or about this. That he has entirely lost the vision or sight of his left eye caused entirely by this injury; that at time the board heard this case before the greater part of his medical testimony was not in the record to wit: the testimony of Dr. J. L. Barker, Dr. A. L. Franklin and Dr. R. L. Martin. This evidence was taken by applicant and filed with the board and was misplaced in some way.'' On the first hearing before the board no mention was made of an injury to appellant's eye. All of his testimony related to injuries to his back, shoulders, and side. The board sustained appellant's motion to reopen the case, and considerable proof was heard. The three physicians whose depositions on the first hearing were alleged to have been misplaced and not considered by the board were introduced as witnesses for the appellant. Two of them testified that his injuries impaired him 25 per cent, and one of them placed the impairment of ability to labor at 50 per cent. Dr. Snow testified that he treated appellant at the time he received the injuries, and that he complained of pain in his eye. He stated that there was a scar or ulcer on the eyeball, and that the eye was red and swollen. Dr. Snow testified on the first hearing, but made no statement then in regard to an injury to appellant's eye. On the second hearing appellant testified that his eye was cut at the time he was injured. In explanation of his failure to introduce any testimony on the first hearing in regard to the injury to his eye, he stated that the company physician, Dr. Taylor, told him the injury was temporary, and, further, that he did not discover the loss of sight in this eye until several months after the accident. It was developed on cross-examination however, that he knew he had lost the sight in this eye before the first hearing before the board. Dr. T. L. Bailey and Dr. D. L. Salmon, eye, ear, nose, and throat specialists, were introduced as witnesses for appellant. They testified that appellant was industrially blind in the left eye, but neither was able to determine definitely what caused the blindness. Dr. Bailey testified in part as follows: ''I examined Mr. Cairel on January 10th, 1929. He stated that on May 11, 1927, he had this accident; that his left eyeball was cut; that is what he told me in the history. Previous to that he stated that

he had been able to see with this eye perfectly good; had never had an occasion to have his eyes examined; poor vision in the left eye since his injury. The reason I answered Mr. Fraser the way I did that 'I don't know' was because I frankly don't know. The only evidence of injury that I find is weakness of the left external rectus muscle. That could be caused by an injury. Paralysis of the external rectus muscle alone is not sufficient to cause the amount of impaired vision that Mr. Cairel has. He has evidence of what we call congenital amblyopia. That is a high era in refraction with the rotation on the eye inward. It is not possible for me to state whether Mr. Cairel's blindness is due to his injury or whether it is a congenital affair. Not wishing to do Mr. Cairel or the Company either an injustice, I advised him to get some one else's opinion.'' Dr. Salmon testified substantially to the same effect. A number of physicians introduced as witnesses by the appellee testified that there had been no change in appellant's condition since the first hearing. Appellant's own medical witnesses admitted there was no change in his condition except as to his eye.

There is no merit in appellant's contention that the judgment should be reversed because the depositions of three of his witnesses were not considered by the board when the first award was rendered. The depositions of these witnesses were before the board and considered by it when the case was reopened. On the first hearing the board had before it the testimony of a number of witnesses to the effect that appellant had suffered a disability of 50 per cent, or more. The missing depositions weakened rather than strengthened appellant's case.

The appellant claiming that his impaired vision resulted from an injury received in the accident of May 11, 1927, the appellee interposed a plea of laches, but, waiving that question, a careful examination of the record has convinced us that there was competent relevant evidence on the second hearing before the Compensation Board warranting its finding that there had been no change in appellant's physical condition since the first hearing, and that his loss of vision did not result from an injury received in the accident in question.

One applying for compensation assumes the burden to establish a prima facie case. He must offer some evidence which would warrant a finding that the disability for which he is claiming compensation resulted from an

injury sustained in an accident arising out of and in the course of his employment. Harvey Coal Corp v. Pappas, 230 Ky. 108, 18 S. W. (2d) 958, 73 A. L. R. 473. Assuming for present purposes that appellant sustained this burden by stating that he had received an injury to his eye in the accident of May 11, 1927, and that the vision in the injured eye became impaired a few months after the accident, there was evidence from which the board could reasonably infer that the loss of vision resulted from pre-existing disease or some other cause having no connection with the accident in question. No physician testified that the loss of vision resulted from an injury or that it probably so resulted. Two eye specialists introduced as witnesses for the appellant frankly stated that they did not know the cause of his loss of vision in his left eye, but they did state it might be due to a congenital disorder. Their examination of his eye disclosed no evidence of an injury which could have brought about the degree of impaired vision found to exist. This evidence, coupled with appellant's failure to mention an injury to his eye until nearly two years after the accident, warranted the finding of the board that his loss of vision did not result from an injury received in an accident arising out of and in the course of his employment.

The finding of facts by the Compensation Board is supported by some competent relevant evidence, and, that being true, its finding is conclusive. Harvey Coal Corp. v. Pappas, supra; Harlan Wallins Coal Corporation v. Knuckles, 226 Ky. 204, 10 S. W. (2d) 809.

Judgment affirmed.