## January-Wood Co. v. Bramel et al.
### (Decided Jan. 9, 1934.)

BLAKEY, DAVIS & LEWIS for appellant.

D. BERNARD COUGHLIN, THOS. D. SLATTERY and CHAS. L. DALY for appellees.

OPINION OF THE COURT BY JUDGE RICHARDSON—Affirming.

The January-Wood Company, a corporation, was engaged, in July, 1928, in operating a cotton plant at Maysville, Ky., at which it manufactured cotton products. Omar Bramel was in its employment, performing the services of a rug filler. It had elected to operate, and was operating, under the Workmen's Compensation Act, section 4956, Kentucky Statutes. Bramel, also, had accepted its provisions, section 4957, Kentucky Statutes.

On July 15, 1928, while operating a reel, Bramel slipped and fell, striking the side of his chest. The next day infection set up in his breast and side, soon causing him to take to his bed, where he remained until his death on July 24, 1928. He had worked six days per week for the corporation for about two years at $15 per week.

Carl Hickle, another employee of the corporation, was present at the time Bramel fell on the reel. To use the language of this witness, Bramel "kind of threw his hands behind him and it looked like his foot slipped and he bumped against the reel and it looked like it hit him in the left side, near the waist line or hip bone or abdomen." The reel was running at the time. "Oil had run down on the floor off of the machine where he oiled the spindle on the machine." "And when his foot slipped he went forward and his left side struck the reel." Hickle also saw him holding his side the night following the accident. Bramel returned next day, and engaged in work a few days. Hickle, on the day before he testified herein, with R. A. Cochran, the chief officer of the corporation, and a representative of the insurance carrier, went to the mill of the January-Wood Company, where, in their presence, with the reel, he demonstrated the actions of Bramel at the time he fell. Up to that time Hickle was under the impression Bramel fell with his right breast or side against the reel. He claims, while so demonstrating to them, he reached the conclusion that Bramel's left breast or side came in contact with it. Dr. Phillips was called on July 19, 1928, to administer treatment to Bramel. At the time of his arrival at the home of Bramel, the latter "was lying in bed with a very painful condition of his right side, crying with pain * * *, quite a bit of swelling on the right side extending to the axilla, and it was bruised or accimosed, showing some condition of blood under the skin tissues there.' "'The area of the injury" "was the upper portion of the lung extending into the axilla—the upper part of the chest," "above the right nipple," "on the right hand side." "Its presence was indicated by swelling, marked tenderness and accimosis." Bramel's history of his injury to Dr. Phillips was "he [Bramel] had reached out for something and got a pull or twist," a "wrenching injury." Dr. Phillips attended him on the 19th, 20th, and 21st of July. "On the 19th he had practically no temperature—just a little and practically none on the 20th." On the 21st "his temperature was 102½." When Dr. Phillips first attended him, it was his impression that Bramel had some infection; but "the next day the swelling was considerably down, but it was still very tender, on the 21st, his temperature had raised to 102½ and he had marked moisture crepitant and sub-crepitant rales through the upper portion of the chest into the back beyond the

right shoulder blade.'' Dr. Phillips determined that Bramel had hypostatic or traumatic pneumonia; i. e., pneumonia following ''an injury to the lung or an injury close to the lung.'' It was his opinion that the pneumonia ''was due to the injury as a secondary complication.'' Dr. Taylor testified that an injury to the right breast would cause ''traumatic pneumonia.'' He differentiates pneumonia and impiema, with the opinion that a patient may have both at the same time, as a consequence of an injury. Impiema, in his opinion, is a general septic condition and, like pneumonia, often follows an injury. In response to a hypothetical question, he gave it as his opinion the injury sustained by Bramel caused his death. On the 23d of July, Dr. Samuel, at the instance of the January-Wood Company, attended Bramel. He found him with a temperature of 102½, ''sore all over,'' ''from head to foot,'' ''so sore he could not turn him over.'' He administered opiates to relieve him of pain and temperature. On the 24th, his temperature had increased to 103 and the soreness had so increased it was impossible to examine him. Dr. Samuel inquired of him if he had had theretofore anything ''like rheumatism.'' Bramel responded ''yes about twenty years ago.'' From this statement, Dr. Taylor diagnosed his affliction, ''inflammatory rheumatism.'' About 12 o'clock on the night of the 24th of July, Dr. Samuel again visited him. After he left Bramel died in about thirty minutes. Dr. Samuel declares: ''I just don't see where it was pneumonia myself;''no ''signs that I could see.'' He was a regular physician of the January-Wood Company. Relatives, friends, and neighbors of Bramel testified, disclosing their observation of his injury and illness. It is not required to dispose of this case, to iterate their testimony, except to say they observed the swollen and discolored condition on the right side of his chest.

As guardian of Bruce Bramel, David Bramel, Leo Bramel, and Christine Bramel, children of Omar Bramel, the Bank of Maysville made application to the Workmen's Compensation Board for adjusted compensation, claiming they were dependents. Norma Jean Bramel, by her mother as next friend, Lizzie Dunaway, applied to the board for compensation, claiming she was an illegitimate child, and dependent, of Omar Bramel. On November 18, 1930 the Workmen's Compensation Board, by and through one of its members, made an award, finding

"Omar Bramel received an injury that resulted in his death and that the injury rose out of and in course of his employment with the defendant, the January-Wood Company," and "that Christine Bramel was a dependent of Omar Bramel and contributed 50% of his earnings to her support"; that Norma Jean Bramel was a partial dependent of Omar Bramel and he contributed 50 per cent. of his earnings to her support. Bruce, David, and Leo Bramel were found by the board not to be dependents. It awarded to the guardian of Christine Bramel $4.87½ per week for 335 weeks for her benefit, and to Lizzie Dunaway 4.87½ a week for the same period of weeks for the benefit of Norma Jean Bramel. Later in November, the January-Wood Company applied for a full board review of the award of November 18, 1930. It was granted. And a review was had by the full board. It sustained the award of November 18, 1930, and directed the payment of 6 per cent. interest "on all past due payments and an additional sum not to exceed $75.00 for burial expenses." On January 7, 1931, within the time fixed by section 4935, Kentucky Statutes, the January-Wood Company filed in the Mason circuit court a petition for review of the award by the full board. On the 17th day of February, 1931, the Workmen's Compensation Board entered an order on its record directing notice to be given to the parties concerned in the award, and thereby declared that "on its own motion it will consider the reopening of the case." On its own motion an order was entered on its record reciting that the full board award be set aside and held for naught, and again submitted on the motion of the January-Wood Company for full board review of the order of November 18, 1930. This last order was entered on March 3, 1931.

On submission, the circuit court decreed that the orders of the Workmen's Compensation Board entered January 20, 1931, and March 3, 1931, were void. The award of the full board was approved and also the payments of the compensation allowed to Norma Jean Bramel and Christine Bramel, and directed to be paid by the January-Wood Company, according to the award.

The January-Wood Company on this appeal urgently insists that the orders of the board entered after filing the petition for review, in the Mason circuit court, are within the purview and authorized by section 4902, Kentucky Statutes. In part it reads:

"Upon its own motion or upon the application of any party interested and a showing of change of conditions, mistake or fraud, the board may at any time review any award or order, ending, diminishing or increasing the compensation previously awarded, * * * upon notice to the parties interested."

Similar orders of the board, and like contention, were considered and determined adversely to the January-Wood Company in Daniel Boone Coal Corporation's Receiver v. Fugate et al., 248 Ky. 507, 58 S. W. (2d) 905; Farmer Motor Co. v. Smith et al., 249 Ky. 445, 60 S. W. (2d) 929. No reason is assigned in briefs authorizing or justifying this court disregarding the construction of section 4902, Kentucky Statutes, given it in those cases.

It is argued there is not a scintilla of evidence to support the award herein. Our resume of the evidence refutes this argument, notwithstanding the accepted rule that the board's findings must rest upon competent and relevant evidence. The basis of the insistence is the testimony of Hickle that when Bramel fell his left side struck the reel, corroborated by that of Dr. Samuel. If there was no evidence other than the testimony of these witnesses, the same would give support to the contention there is no evidence supporting the finding of the board. The burden of proof was on the claimants. Harvey Coal Corporation v. Pappas et al., 230 Ky. 108, 18 S. W. (2d) 958, 73 A. L. R. 473; Cairel v. Hall-Luton Coal Co. et al., 243 Ky. 168, 47 S. W. (2d) 1063. This burden was met to the satisfaction of the board. It is not disputed that Omar Bramel fell against the reel. Only the testimony of Hickle gives doubt as to whether it was the left or right side of Bramel's chest that struck the reel when he fell. The fact his right breast immediately showed a discoloration, swelling, and fever, ought to be and is sufficient to remove doubt as to where his person struck the reel. The injury and the immediate condition of the right side of his chest are inexplicable unless the same were the result of his falling against the reel. The board was not required to accept as conclusive the statement of Hickle that it was his left side that struck the reel. It had the right, and it was its duty, to accept his statement in this respect, and weigh it in the light of the circumstances and the inferences fairly and reasonably de-

ducible from all of the facts, without indulging in guessing, conjecture, or surmise. Big Elkhorn Coal Co. v. Burke et al., 206 Ky. 489, 267 S. W. 142; Hansen v. Frankfort Chair Co., 249 Ky. 194, 60 S. W. (2d) 349. Its finding of facts, being supported by some creditable evidence, it (Rusch v. Louisville Water Co., 193 Ky. 698, 237 S. W. 389) is conclusive on the courts. Sunlight Coal Co. et al. v. Floyd, 233 Ky. 702, 26 S. W. (2d) 530; Hagan et al. v. Mason-Hanger Construction Co. et al., 198 Ky. 326, 248 S. W. 896; Harvey Coal Corporation v. Pappas, supra; Creech Coal Co. v. Smith et al., 234 Ky. 166, 27 S. W. (2d) 686; Broughton's Adm'r v. Congleton Lbr. Co., 235 Ky. 534, 31 S. W. (2d) 903. And since the evidence is conflicting on the contested issues, its finding thereon is also conclusive. Section 4935, Kentucky Statutes; Cogar Grain, Coal & Feed Co. v. Workmen's Compensation Board et al., 195 Ky. 477, 242 S. W. 863; Hardy-Burlingham Mining Co. v. Hurt et al., 238 Ky. 589, 38 S. W. (2d) 460. Nor are we authorized to interfere with its finding when the facts are disputed. Ky. & W. Va. Power Co. v. Terry, 238 Ky. 187, 37 S. W. (2d) 36. The evidence warranted the board's finding that Bramel's injury, sustained by falling against the reel, was the primary cause of his death. Standard Elkhorn Coal Co. v. Reffett et al., 248 Ky. 487, 58 S. W. (2d) 619; Fordson Coal Co. v. Bledsoe et al., 236 Ky. 409, 33 S. W. (2d) 302; Mary Helen Coal Corp. v. Hooker, 237 Ky. 346, 35 S. W. (2d) 535; Ky. & W. Va. Power Co. v. Terry, 238 Ky. 187, 37 S. W. (2d) 36; Black Star Coal Co. v. Collins et al., 236 Ky. 39, 32 S. W. (2d) 540. And while we have jurisdiction to review its awards, we are not authorized to ignore its finding of facts. It is only in case there is no evidence to support it, are we authorized to reverse and direct a dismissal of the application. Madden et al. v. Black Mt. Corp., 238 Ky. 53, 36 S. W. (2d) 848.

It is earnestly argued the finding of the board that Christine and Norma Jean Bramel were dependents of Omar Bramel is not sustained by the evidence. Only the evidence in behalf of claimants on this question appears in the record. It is not disputed that Bramel contributed to their support. The amounts expended by him for that purpose are not controverted. Section 4894, Kentucky Statutes, defines "dependents." Under it, a dependent child is one "under the age of sixteen years, or over sixteen years if incapacitated from wage-

earning, upon the parent with whom such child or children are living or by whom actually supported at the time of the accident. In all other cases the relation of dependency in whole or in part shall be determined in accordance with the facts of each case existing at the time of the accident, but no person shall be considered a dependent in any degree unless he be living in the household of the employee at the time of the accident, or unless such person bears to the employee the relation of * * * child or grandchild.''

Christine Bramel is a legitimate daughter of Omar Bramel. Norma Jean Bramel is an illegitimate daughter. Section 4895, Kentucky Statutes, expressly includes recognized illegitimate children. L. E. Myers Co. v. Noland et al., 222 Ky. 748, 2 S. W. (2d) 387. The evidence establishes that Bramel was the father of Norma Jean Bramel, and recognized her as his child, and that she and Christine Bramel were dependents. Lockhart's Guardian v. Bailey Pond Creek Coal Co., 235 Ky. 278, 30 S. W. (2d) 955.

It is argued that the award fails to meet the requirements of section 4933, Kentucky Statutes, in that it fails to show ''a separate finding of fact and a finding of law.'' The above-quoted clause of the award expressly states that Bramel's injury ''arose out of and in the course of his employment with the defendant and resulted in his death.'' This statement clearly shows that it was the finding of the board that his injury was the primary and direct cause of his death, notwithstanding it fails to disclose that pneumonia intervened and hastened his death. It adequately fulfills the requirements of section 4933.

Wherefore the judgment is affirmed.