Mr. Justice Hall
delivered the opinion of the Court.
We refer to the plaintiffs in error respectively as the Commission and the Fund.
On October 3, 1958, Harold Spoo, an employee of Willis Spoo Mill, died of compensable injuries. The Fund was the insurance carrier for Willis Spoo Mill.
At the time of his death Harold Spoo left as his dependents, Doris Ray Spoo, widow, herein referred to as Doris; Randy LaVerne Spoo and Terrence Lee Spoo, minor sons by a former marriage, herein referred to as Randy and Terrence. Doris, Randy and Terrence filed with the Commission their claims for compensation.
Hearing before a referee was had June 29, 1959, for the sole purpose of determining the “extent of dependency of claimants and proportionate distribution of compensation benefits.”
On July 7, 1959, the referee entered his award directing the Fund to pay compensation at .the rate of $159.25 per month until the full sum of $11,466.00 is paid,
“ * * * such payments to be divided as follows:
“$101.25 per month to Doris E. Spoo;
$58.00 per month to the Central Bank and Trust Company * * * to be deposited equally in * * * accounts * * * in the names of Randy LaVerne Spoo and Terrence Lee Spoo * * * .” . >"
*583 Randy and Terrence were dissatisfied with the award as to distribution of the benefits awarded and had the same reviewed by the referee, the Commission, the District Court of Denver, and this court. Ón January 16, 1961, this court reversed the judgment of the District Court and directed that:
“ * * * the cause [be] remanded with directions for further proceedings consistent with the views expressed herein.”
One of the views expressed by this court was:
“Counsel for the plaintiffs in error urge that the available amount be divided into one-third shares. We consider such division to be fair and equitable under the circumstances, and think an award of less than this percentage to the children would amount to an abuse of discretion.” Spoo v. Spoo, 145 Colo. 268, 358 P. (2d) 870.
On remand, the referee reviewed the record, considered suggestions of the Fund and attorneys for the minor children, and was advised of the fact that Doris had remarried on September 3, 1960, and as of that date became ineligible for further dependency payments.
Also presented for consideration was the plea of the Fund that it had made payments to Doris prior to her remarriage at the rate of $101.25 per month, in the total amount of $2227.40, such payments having been made pursuant to the July 7, 1959, award of the referee.
The amount paid to Doris was $1045.40 more than she should have received under the decision of this court in Spoo v. Spoo, supra, wherein it was held that she was entitled to only one-third of the total payments of $159.25 per month. The overpayment to Doris was in the same amount as the underpayments to Randy and Terrence.
With the foregoing facts before him, the referee on October 6, 1961, made a supplemental award. Pertinent provisions thereof are:
1. That on September 3, 1960, Doris remarried and on *584 that date her right to payments terminated and subsequent thereto the benefits should be paid to the . two children.
. 2. “On the basis of the facts as they appear in the Industrial Commission file, the Referee finds that' the State Compensation Insurance Fund paid to Doris E. Spoo, pursuant to the Referee’s Order dated July 7, 1959, the sum of $2126.25 [should be $2227.40], and that no objection nor request for stay of execution was made by the minor children or their guardian concerning this payment. Up to the date of the widow’s remarriage she would have been entitled to the sum of $1182.14 if the death benefits had been divided equally between the three. dependents, thus making an overpayment of $944.11 [should be $1045.40], and it is this sum that the children now demand the State Compensation Insurance Fund to pay over to them.
“The referee having considered the entire file, the arguments of counsel as set forth in their respective briefs, and having fully reviewed the Supreme Court’s decision, believes and so finds that the State Compensation Insurance Fund acted in good faith in complying with the Referee’s Order of July 7, 1959, that no stay of execution was requested by the children, and to now require it to make duplicate payment of the sum of $911.11 [should be $1045.40] would be untenable.
■3. “IT IS, THEREFORE, ORDERED: That the payments made by the State Compensation Insurance Fund, pursuant to the Referee’s Order of July 7, 1959 be approved up to the date of remarriage of Doris E. Spoo * * * .” (Emphasis supplied.)
Randy and' Terrence sought ■ review of the award of the referee. The Commission, on November 29, 1961, affirmed this award. Randy and Terrence petitioned for review of this order and the Commission, on January 25, 1962, entered its further supplemental award, wherein its award'of November'29, 1961, was modified,'hold *585 ing that there had been paid to Doris $2227.40, resulting in an overpayment to her of $1045.40 instead of $944.11 as found by the referee.
The minor children had this order reviewed by the Denver District Court, which court, on June 21, 1962, entered its findings as follows:
“It is the finding of this Court that the determination made by the Commission that the State Compensation Insurance Fund should take credit for the amount of One Thousand Forty-Five Dollars and Thirty-Six Cents paid to Doris E. Spoo prior to the decision of the Supreme Court entered on January 16, 1961, and contrary to such decision, was in error because the Commission acted without or in excess of its powers, exceeded its jurisdiction, misconstrued the law, and in so doing acted contrary to the law.”
Judgment was entered setting aside that part of the award which permitted the Fund to take credit against the total award of $11,466.00 of the sum of $2227.40 paid to Doris, the same being $1045.40 in excess of the amount found to be due her in Spoo v. Spoo, supra.
The Commission and the Fund are here by writ of error seeking reversal.
They filed a joint brief and urge for reversal two grounds:
1. The statute limits the Fund’s liability to $11,466.00. The Commission is a creature of statute and therefor has no power to order payments in excess of $11,466.00. The Fund’s assets are trust funds and the Fund contains no monies to pay claims in excess of the statutory limit.
2. “The State Compensation Insurance Fund, in this transaction, occupied the position of a mere stakeholder, or depository, and discharged its full and complete liability by making payments in accordance with an order and award of the Industrial Commission, regular and valid on its face. During the time when the Fund was making the payments in compliance with the order, the *586 order was in force and lawful by the express terms of the statute.”
We find no merit in either contention. It is true that the referee, on July 7, 1959, entered an award and directed the Fund to make certain payments. This award was far from being final, never became final, and was devoid of validity. The record discloses that this order was reviewed by the referee, twice by the Commission, by the District Court and by this court. The Fund knew that all of the foregoing review proceedings were available to any party in interest and knew that review proceedings were being pursued.
Despite the foregoing knowledge, the Fund, on July 15, 1959, prior to expiration of the time provided by C.R.S. ’53, 81-14-6, for seeking review of the referee’s award, paid to Doris $911.25. Certainly the Fund would not be criticized for promptly discharging its obligations. However, discretion would dictate that, the Fund knowing that the award was not final, knowing that it was objectionable to the minor children who were seeking review, give pause and await final orders as to whom it should pay and how much. Its alacrity and sprightliness in making payments to the wrong person cannot relieve it from its duty to pay those to whom it is indebted.
Counsel for the Commission and the Fund contend that C.R.S. ’53, 81-15-4, provides that the Fund may make payments only: “ * * * in accordance with the provisions of this chapter.”
For the sake of accuracy we point out that the quoted statute provides the above, and significantly more:
“ * * *. Said fund shall be applicable to the payment of * * * losses sustained or liabilities incurred under the contracts or policies of insurance issued by said * '* * fund in accordance with the provisions of this chapter. * * * .” (Emphasis supplied.)
C.R.S. ’53, 81-15-3, provides that the Fund shall have the power to:
*587 “ (2) ■ Make and enter into contracts of insurance with employers as herein provided, * * * .”
Thus it is provided that funds be paid out according to the terms of policies of insurance issued in return for premiums paid by the employer rather than as provided by law.
All that the Fund needs to do to be in full compliance with its policy issued to the employer, statutory provisions, and the directions of this court, as expressed in Spoo v. Spoo, supra, is to pay $11,466.00 to those persons entitled thereto, and to each the amount specified in the final award — the award. The Fund is delinquent in its payments to Randy and Terrence. They should be made current and kept that way. The Fund should have paid to the minors until remarriage of the widow, two-thirds of the monthly award; to the widow one-third of the award; after the remarriage the full monthly award to the children. The Fund is in default in its payments to Randy and Terrence; these defaulted payments in the amount of $1045.40 should have been paid to Randy and Terrence on the announcement of Spoo v. Spoo, supra. They should be paid now. By paying now, payments will not run more than six years, nor will the Fund have paid to anyone entitled thereto any amount in excess of its contractural obligations.
The interlocutory order of July 7, 1959, was not a lawful "order. Being unlawful, the Fund cannot justify its actions in paying out money pursuant thereto.
Counsel contend that the Fund is a mere stakeholder. We find nothing in any statute so providing. On the other hand, we do find in the statute that it may make contracts of insurance, 81-15-3.
C.R.S. ’53, 81-5-5, provides that:
“Every contract * * * or insurance policy * * * must contain a clause to the effect that the insurance carrier shall be directly and primarily liable to the employee, and in the event of his death, to his dependents, to pay *588 compensation, if any, for which the employer is liable, thereby discharging to the extent of such payment the obligations of the employer to the employee; * * *
Its duties were contractual, they have been finally adjudicated and those duties- may be discharged by making payments pursuant to such final adjudication.
It is also suggested that the minors should have obtained a stay of execution. We see no reason why they should seek to stop the flow of money to themselves.
Usually stays are sought by those ordered to do something or by those whose property may be taken unless judgment is stayed. The minors had no use for a stay, they were not ordered to do anything, their property was not about to be seized; a stay would only serve to stop payment of the amounts awarded to them. The widow was in the same position as the minors as far as a stay was concerned. Had steps to enforce the ill-fated award of July 7, 1959, been taken, or threatened, the Fund might well have sought and obtained a stay. No steps to enforce the award were taken or threatened.
The Fund’s reliance on an award in process of review is not the measure of its liability, and its good faith cannot serve as a substitute for discharging its legal obligations.
The judgment is affirmed.
Mr. Justice Moore and Mr. Justice Pringle not participating.