18322

Janet Underwood GREER and Linda Gail Greer, Respondents and Cross-Appellants, v. GREENVILLE COUNTY and State Workmen's Compensation Fund, Appellant.

(141 S. E. (2d) 91)

444

Messrs. *Daniel R. McLeod, Attorney General,* and *David Aiken, Assistant Attorney General,* of Columbia, and *Robert S. Galloway, Jr.,* of Greenville, *for Appellants,*

446

*Messrs. Leatherwood, Walker, Todd & Mann,* of Greenville, *for Respondents and Cross-Appellants,*

March 11, 1965.

Moss, Justice.

This case arose under the South Carolina Workmen's Compensation Act, Section 72-1 *et seq.,* Code of 1962. It involves a claim for compensation arising out of the death of A. J. Greer, Jr., who left surviving him his widow, Janet Underwood Greer, and a minor daughter, Linda Gail Greer, hereinafter referred to as the respondents. They allege that A. J .Greer, Jr. was a Deputy Sheriff of Greenville County and that he died of a coronary thrombosis on July 23, 1960. They assert that such was an accident arising

out of and in the course of his employment as aforesaid and that his death was caused by unusual strain and overexertion in the performtnce of the duties of his employment and, therefore, was a compensable accident. Greenville County and State Workmen's Compensation Fund, the appellants herein, denied that the death of A. J. Greer, Jr. arose out of and in the course of his employment.

A hearing was held before a Single Commissioner on September 22, 1960. Thereafter, on November 16, 1960, the commissioner found that "beginning on Wednesday night, July 20, 1960, the deceased did undergo excessive unusual stress and strain over and above his sedentary duties heretofore required of him, which precipitated a coronary thrombosis, causing his death on July 23, 1960." Based upon this finding of fact compensation was awarded.

The appellants prosecuted an appeal to the Full Commission and by appropriate exceptions challenged the correctness of the findings of fact made by the Single Commissioner. They asserted that the only reasonable inference to be drawn from the evidence was that A. J. Greer, Jr. did not sustain an injury by accident arising out of and in the course of his employment, there being no competent evidence to support the conclusion that the deceased died from a heart attack induced by overexertion in the performance of his duties as a deputy sheriff. This appeal was heard on January 31, 1961 and, thereafter, a majority of the Full Commission did, on March 6, 1961, file its opinion reversing the Single Commissioner. We quote from such opinion, the following:

"The majority of the Commission is of the opinion that the hearing Commissioner was in error in awarding compensation to the dependants of the deceased employee. The testimony. as presented by the claimants shows that the claim was based on alleged overexertion suffered by the deceased employee as a result of a stake-out that began at 11:00 p. m., on Wednesday night, July 20, and continuing until 4:00 a. m., on July 21, 1960. The testimony further revealed that the deceased employee served on his usual and

accustomed duties on the following Thursday, Friday, and Saturday, and was discovered dead in his automobile Saturday night, the 23rd, at approximately 8:00 p. m. Two qualified doctors testified in this case, both of whom had treated the deceased employee for his heart condition prior to his death. They expressed opposite opinions as to the casual connection of the incident and the employee's death. The Commission accepts the well reasoned opinion of the physician in whose medical judgment there was no connection between the over-exertion and the death of the employee, A. J. Greer. Moreover, it is the considered opinion of the Commission that this long gap of time between the stake-out and the time that the employee was found dead on Saturday night, does not indicate any relationship between this incident and the employee's death."

The respondents, after the decision heretofore referred to, filed with the Industrial Commission a petition for reargument on the ground that the Commission overlooked and misapprehended certain portions of the testimony upon which the aforesaid decision was predicated. Specifically, they assert that the Commission accepted the opinion of Dr. Everett B. Poole which was given in response to a hypothetical question. It is the position of the respondents that such expert testimony had no probative value because the hypothetical question propounded to Dr. Poole assumed facts which were not present in the record and omitted facts which were present. Additionally, the respondents took the position that the record shows that no guardian *ad litem* was appointed for the minor respondent, Linda Gail Greer, and hence the proceedings were null and void and of no effect. Application was also made to the Commission to take additional testimony which was in the nature of after and newly discovered evidence. The foregoing petition for reargument, and the application for permission to take additional testimony and to grant a new hearing after the appointment of a guardian *ad litem* on behalf of the minor respondent were denied by the Commission. The date of the foregoing applications was April 3, 1961.

The respondents here appealed to the Circuit Court from all of the orders of the Industrial Commission. The exceptions charge (1) That the Commission committed error in failing to remand this case to the Single Commissioner with directions that a guardian *ad litem* be appointed for the minor claimant, Linda Gail Greer, for the reason that it was apparent upon the face of the record that the said claimant was a minor and no guardian *ad litem* had been appointed for her and the proceedings were accordingly null and void for the want of such appointment. (2) That it was error for the Commission to deny the application of the respondents for re-argument and for the taking of additional testimony. (3) That the Commission committed error in considering the testimony of Dr. Everett B. Poole in that his testimony had no probative value because the hypothetical question propounded to him assumed facts which were not present in the record and omitted facts which were present. (4) That the Commission was in error in reversing the opinion and award of the Hearing Commissioner which had directed the payment of compensation to the respondents.

The appeal of the respondents was heard by the Honorable James B. Pruitt, Presiding Judge of the Thirteenth Circuit, who, on November 4, 1961, issued his order reversing the orders of the Industrial Commission and remanding the case to the Hearing Commissioner for a further hearing. In his order he stated the following:

"After a thorough study of this record I am of the opinion that the hypothetical questions propounded to the witness, Dr. Poole, do not contain a proper hypothesis in that the witness was asked to assume facts which were not present in the record and further material facts which were present in the record were omitted from the hypothetical questions. It would, therefore, be this Court's opinion that Dr. Poole's testimony had no probative value and that the Majority Commission committed error in reversing the Hearing Commissioner's award in favor of the claimant.

"However, under all of the circumstances I feel that the case should be sent back to the original Hearing Commissioner with the instructions that a Guardian *ad Litem* be appointed on behalf of the minor claimant and with the further instructions that the parties be permitted to present such additional testimony as they deem advisable. As set forth above the claimants presented an application to the Industrial Commission to take additional testimony supporting said application by affidavits from Dr. Poole, and two lay witnesses. The Commission declined this application but in the opinion of this Court said application with supporting affidavits meets all of the requirements of the applicable rules and that accordingly said application should have been granted."

All parties to this action have appealed to this Court from the order of the Circuit Court. We will first consider the exceptions of the appellants.

The first question for decision is whether the Circuit Court erred in remanding this case to the Hearing Commissioner with instructions that a guardian *ad litem* be appointed on behalf of the minor daughter of the deceased. Section 10-231 of the Code provides that when an infant is a party to a proceeding he must appear by a guardian *ad litem* and this includes a proceeding before the Industrial Commission. Section 10-233 of the Code provides that when an infant is plaintiff the guardian *ad litem* shall be appointed upon the application of such infant if he be of the age of fourteen years. We have held that the failure to appoint a guardian *ad litem* for an infant makes a judgment voidable and not void and such judgment will not be avoided unless it appears that substantial injustice has been done to the minor. While the Court will always be careful of the rights of an infant it will not in all cases set aside irregular judgments against such infant as of course. *Robertson v. Blair & Co.,* 56 S. C. 96, 34 S. E. 11; *Barfield v. Barnes,* 108 S. C. 1, 93 S. E. 425.

A claimant who has attained the age of eighteen years is *sui juris* for the purpose of filing and prosecuting a claim for compensation pursuant to the provisions of the Workmen's Compensation Law. Section 72-183 of the Code. *Brown v. Plowden Co.,* 216 S. C. 114, 57 S. E. (2d) 29. Here, the record shows that Linda Gail Greer was born December 4, 1942, and reached her eighteenth birthday on December 4, 1960. The hearing of this case before the Single Commissioner was held on September 22, 1960, and his award was made on November 16, 1960. The hearing before the Full Industrial Commission was held on January 31, 1961, and its decision was rendered on March 6, 1961. It thus appears that the minor had attained her legal majority since the trial before the Single Commissioner and before the review of this case by the Full Commission. She has, therefore, ratified the proceedings had in her behalf while she was a minor, by continuing the prosecution of the cause in her own right after attaining her majority. *Lovett v. Stone,* 239 N. C. 206, 79 S. E. (2d) 479, 60 A. L. R. (2d) 780; *Hicks v. Beam,* 112 N. C. 642, 17 S. E. 490. We should point out that the minor does not make any showing whatsoever of any prejudice to her by not being represented by a guardian *ad litem.* The Circuit Judge was clearly in error in remanding this case to a Hearing Commissioner for the purpose of appointing a guardian *ad litem* for Linda Gail Greer because she had then reached her legal majority. The question of appointing a guardian *ad litem* for her had become moot. This exception of the appellants is sustained.

The appellants charge that the Circuit Court committed error in remanding this case to the Commission with instructions that the parties be permitted to present additional testimony. It appears that after the Commission issued its opinion on March 6, 1961, reversing the Single Commissioner and denying respondents' claim, they appealed to the Circuit Court, which said appeal was dated April 3, 1961. The record shows that on April 5, 1961, the respondents

here made application to the Commission based upon the record and certain affidavits for permission to take additional testimony which was in the nature of after discovered evidence. The Commission, on May 16, 1961, by order, held, that it was without authority to grant the said application. The appeal from this order is dated May 24, 1961. It thus appears that the application to offer additional testimony was made after the respondents here had appealed to the Circuit Court from the order of the Commission denying their claim to compensation.

Section 72-356 of the Code provides a right of appeal and the machinery for perfecting that appeal.

It is plain from the foregoing statute that it was the intention of the Legislature to provide for the disposition of a claim made to the Industrial Commission by the orderly process of a hearing before a Single Commissioner; a review, by the Full Commission, of the Single Commissioner's award; an appeal from an award by the Full Commission to the Court of Common Pleas; and an appeal from that Court to the Supreme Court. *Riddle v. Fairforest Finishing Co.,* 198 S. C. 419, 18 S. E. (2d) 341. However, we should point out that under Section 72-356 of the Code, that either party may appeal from the decision of the Commission to the Court of Common Pleas "for errors of law under the same terms and conditions as govern appeals in ordinary civil actions."

When the respondents here appealed to the Court of Common Pleas from the adverse ruling of the Commission, such Commission had no further jurisdiction over the controversy pending the appeal. Assuming that the Commission had the authority to grant the application of the respondents to take additional testimony, such could be exercised only in a case which was properly before it and not where it had been divested of jurisdiction by appeal to the Court of Common Pleas.

We think that the effect of an appeal to the Court of Common Pleas from a decision of the Commission is well stated in 100 C. J. S. Workmen's Compen-

sation § 734, at page 1097. We quote therefrom the following:

"After proceedings for review or appeal are taken from a decision or award of a board or commission, the board or commission ordinarily ceases to have further jurisdiction over the controversy pending the appeal; it cannot consider new evidence presented on a petition for rehearing, further testimony cannot be taken before it, and an order made by the commission while a petition for review is pending is unauthorized and a nullity. * * *"

There is cited in support of the foregoing rule the cases of *National Surety Corp. v. Bellah,* 5 Cir., 245 F. (2d) 936; *Wammack v. Industrial Commission,* 83 Ariz. 321, 320 P. (2d) 950; *Mason v. Lauck,* 232 Ark. 891, 340 S. W. (2d) 575; *Industrial Commission v. Spoo,* 151 Colo. 581, 380 P. (2d) 49; *Nathan v. Parks,* 164 Md. 117, 164 A. 179; *January-Wood Co. v. Bramel,* 252 Ky. 258, 67 S. W. (2d) 14; *C. V. Hill & Co. v. Drake,* 14 N. J. Misc. 95, 182 A. 480; *Julian v. Port Everglades Terminal Co.,* Fla., 135 So. (2d) 423.

We conclude that the Commission was without authority to consider the application of the respondents for permission to take additional testimony which was in the nature of after discovered evidence. The Commission had been divested of jurisdiction by the appeal of the respondents to the Court of Common Pleas. The trial Judge was in error in not so holding.

The appellants assert that there was error on the part of the trial Judge in holding that the hypothetical questions propounded to Dr. Everett B. Poole did not contain a proper hypothesis because he was asked to assume facts which were not present in the record and facts which were present in the record were omitted from such questions. It was further asserted that the Court erred in holding that the testimony of Dr. Everett B. Poole had no probative value and the Commission committed error in considering such testimony.

The testimony shows that A. J. Greer, Jr., was a Deputy Sheriff for Greenville County. It appears that on November 13, 1958, he suffered a coronary thrombosis and had been continuously treated therefor by Dr. McMurray Wilkins, Jr. He was also examined by Dr. Everett B. Poole on June 17, 1959. Upon the return of A. J. Greer, Jr. to work, he was made a warrant clerk for two or three months and, thereafter, he was assigned to the civil department of the Sheriff's office and in this capacity he served civil processes and repossessed personal property. His normal working hours were from 8:00 A. M. to 5:00 P. M. but in case of emergencies he was expected to respond at all times. During the day of July 20, 1960, this being a Wednesday, the deceased worked his usual hours and that night he assisted in a "stake out" in Greer, South Carolina, which consisted in watching a building where an anticipated "break in" would occur. The deceased, along with a fellow officer, began this "stake out" "something after eleven o'clock" on Wednesday night, July 20, 1960, and such continued until sometime prior to 4:00 A. M. on the morning of July 21, 1960. The deceased returned home from this "stake out" at approximately 3:50 A. M.

J. O. Hamilton, the fellow officer who was working with the deceased, testified that in making the "stake out" that he and the deceased went to a dilapidated building, formerly used by Duke Power Company. He stated that there were no facilities that they could use to sit down while they were watching and that the plaster was lying on the floor. These two officers were watching constantly from a window in the dilapidated building. This officer testified that the "stake out" consisted of "watching and waiting" and that "its pretty strenuous at times" because of standing in one position. He further testified that on a "stake out" you could not make too many movements as such would alert someone that you were there.

The wife of the deceased testified that he came home from the "stake out" at 3:50 A. M. on the morning of

July 21, 1960, and he "was only asleep about two hours, he couldn't rest." She testified that he worked on Friday and was tired. She was asked how did he compare on Friday with the other nights that she had seen him come in. Her reply was that his eyes looked swollen and he was more tired. She said that the deceased went to bed about 9:00 o'clock on Friday night, July 22, 1960. She testified further that the deceased worked Saturday morning, July 23, 1960, but that he did go out in the afternoon with one T. J. Wood. She said that her husband performed his normal duties on Friday so far as she knew.

T. J. Wood testified that he saw the deceased about two hours before his death which occurred on July 23, 1960, and that during the late afternoon of such day he rode around with the deceased in a county car checking on unnecessary parking on some roads in the Greer area. The deceased left the witness Woods about 7:00 P. M. with the statement that he was going home to eat supper and then would check a road near the property of the witness around 10:00 o'clock. This witness testified that the deceased had been checking these roads for years and such was regular routine with him. A. J. Greer, Jr. was found dead within the vicinity of the road he had told Mr. Wood he would check that night.

J. R. Martin, Sheriff of Greenville County, testified that when the deceased returned to work after he had suffered a coronary thrombosis in 1958, he was made a warrant clerk in the office and such continued for a period of two or three months. He said that the deceased requested a transfer to the civil department; that his doctor told him he could handle this job and he would like it much better because he would be on the outside rather than doing inside office work. The Sheriff said that the deceased was made a civil deputy primarily because of his heart condition. He testified further that it was the duty of any deputy sheriff, as long as he is in his community, to answer any call or to help the public in any way. The Sheriff further said that when

he went to Greer for the purpose of setting up the "stake out" he found A. J. Greer, Jr. in the police station. He said that Greer didn't know they were coming and he didn't know that Greer would be there. He also testified that Greer was the only deputy who had worked all that day and was working that night on the "stake out". He said that all deputies were subject to call twenty-four hours a day.

Dr. McMurray Withers, Jr., a witness for the respondents, testified that in his opinion A. J. Greer, Jr. died as a result of having a second myocardial infarction or coronary thrombosis and "that the mental anguish and the physical exertion that would be required of A. J. over and above having worked during that day, would certainly or most likely precipitate or aggravate his condition and cause a second coronary such as he had."

Dr. Everett B. Poole was called as a witness in behalf of the appellants. He testified that he examined A. J. Greer, Jr. on June 17, 1959, and found that he had had a serious heart attack which had occurred on November 13, 1958, and it was his conclusion that this heart attack was the end result of a long standing coronary heart disease which up until that time had never been manifested at a clinical or symptomatic level. He testified that he obtained a history from A. J. Greer, Jr. as to his activities and he did not think such contributed to the attack in November, 1958. In answer to a hypothetical question which was propounded to him by counsel for the appellants he said that in his opinion the terminal event was just another incident in the course of a long standing process of coronary heart disease and that engaging in the "stake out" played no part in the fatal heart attack but on the contrary the fatal heart attack was the result of his original heart condition. This witness further testified on cross-examination that if the terminal event had its beginning on the night of the "stake out", the deceased would have been expected to have had some symptoms prior to forty-eight hours later.

The record shows that when the hypothetical question, to which reference has been previously made, was propounded to Dr. Poole, no objection thereto was made by the respondents. This witness was fully cross-examined by counsel for the respondents upon the answer that he had made to the aforesaid hypothetical question. It was not until after the Commission had filed its opinion and award, and upon the respondents' petition for re-argument, that they asserted that the testimony of Dr. Poole was based upon a hypothetical question which was predicated upon an improper and incompetent hypothesis in that it assumed facts which were not present in the record and omitted facts which were present. The respondents point out that the hypothetical question was deficient in seven respects and, because thereof, the testimony had no probative value.

It is generally true that a hypothetical question should assume substantially all material facts relating to the subject on which the judgment of the expert is sought and a question which does not contain all the facts essential to some theory within the range of the evidence should be excluded, provided the objection thereto specifically points out the imperfection. The general rule that an appellate court will consider only such questions as were raised and reserved in the trial court has been applied in the case of objection to the form of a question propounded to a witness. Under this rule an objection that a hypothetical question omitted material facts cannot be made for the first time on review. It was so held in the case of *McCarthy v. General Electric Company,* 293 Pa. 448, 143 A. 116, 60 A. L. R. 1288, where it was said:

"It is suggested for appellant that some of the questions asked of plaintiff's experts omitted certain material data. As to that, it is sufficient to say no objection was made to the questions or motion made to strike out the answers and that the only error assigned is to the final judgment. A litigant cannot sit by and permit evidence to go in the record and then escape the final decree because of the im-

proper form of the questions. Had timely objection been made thereto, the questions could have been framed so as to meet it."

In 88 C. J. S. Trial § 155, page 303, it is stated:

"Expert testimony, which is introduced without objection, should be considered, and can support a verdict. Where no objection is made to the qualifications of an expert witness, the testimony of such witness must be considered and given its due probative value. Where facts are introduced without objection, an expert witness may properly answer a hypothetical question based on those facts. In the absence of an objection to a hypothetical question to an expert witness, his answer should not be disregarded by the court because the question omits some essential feature."

In *Virginia Beach Bus Line v. Campbell,* 4 Cir., 73 F. (2d) 97, it was held that the admission of medical expert's testimony in answer to an imperfectly framed hypothetical question, *not sufficiently specific as to detail and omitting* reference to some facts in evidence was not error; opposing counsel having the right to show on cross-examination of witness that consideration of all facts would alter his opinion.

Here, the respondents did not make timely objection to the hypothetical question propounded to Dr. Poole and their failure to so object was a waiver of objection to its admissibility. The respondents are not in position to question the sufficiency of the hypothetical question above referred to, where they did not make proper and timely objection thereto. It follows that it was improper for the Circuit Court to hold that the hypothetical question propounded to Dr. Poole was improper because such assumed facts which were not present in the record and omitted facts which were present. The testimony of Dr. Poole must be considered and given due probative value because such was admitted without proper or timely objection thereto.

The final issue for determination is whether there was any competent evidence to support the factual findings by

the Commission that there was no causal connection between the employment of the deceased and his fatal heart attack.

The general legal principles which govern the determination here of whether the employee's heart attack constituted a compensable accident within the meaning of the Workmen's Compensation Act, as established by our prior decisions, were restated in the recent case of *Black v. Barnwell County*, 243 S. C. 531, 134 S. E. (2d) 753; from which we quote:

"The general rule has been adopted in this State that a coronary attack suffered by an employee constitutes a compensable · accident within the meaning of the Workmen's Compansation Act if it is induced by unexpected strain or over-exertion in the performance of the duties of his employment, or by unusual and extraordinary conditions in the employment. *Kearse v. South Carolina Wildlife Resourses Department*, 236 S. C. 540, 115 S. E. (2d) 183. It has also been held, as stated in *Walsh v. United States Rubber Co.*, 238 S. C. 411, 120 S. E. (2d) 685, that 'if a heart attack results as a consequence of the ordinary exertion that is required in the performance of the duties of the employment in the ordinary and usual manner, and without any outward untoward event, it is not compensable as an accident. The fact that due to a weakened heart condition, the exertion required for the ordinary performance of the work is too great for the particular employee, who undertakes to perform it, does not make it a compensable accident. *Sims v. South Carolina State Commission of Forestry*, 235 S. C. 1, 109 S. E. (2d) 701.' "

It is the settled rule that in Workmen's Compensation cases the Commission is the fact-finding body, and that on appeal this Court and the Circuit Court are limited in their review of the facts to a determination of whether or not there is any competent evidence to support the factual findings of the Commission. When there is a conflict in the evidence, either of different witnesses or of the same witnesses, the findings of fact of the Commission

are conclusive. It is only when the evidence gives rise to but one reasonable inference that the question becomes one of law for the Court to decide. *Black v. Barnwell County,* 243 S. C. 531, 134 S. E. (2d) 753.

After expert testimony is admitted by the Court, it ██ ██ is to be considered by the fact-finding body just as other evidence and given such weight, as in the .opinion of such body, it should receive. *Smith v. Southern Builders,* 202 S. C. 88, 24 S. E. (2d) 109. The opinions of physicians or medical experts may constitute substantial evidence, sufficient to support a finding, verdict, or judgment, but the credibility and the weight of their testimony is for the jury or other triers of the facts. *Anderson v. Campbell Tile Co.,* 202 S. C. 54, 24 S. E. (2d) 104.

The basic issue before the Commission in this case was whether there was causal connection between the employment of the deceased and the heart attack which resulted in death. That issue was factual and its determination by the Commission is conclusive on appeal if supported by any competent evidence. The conclusion of the Commission here is not lacking in evidentiary support and such was binding upon the Circuit Court. The probative value of the testimony of Dr. Poole was for determination by the Commission and, having found therefrom that there was no causal connection between the death of A. J. Greer, Jr. and his employment, we are bound by such finding.

The judgment appealed from is reversed and this case remanded for entry of judgment in favor of the appellants.

Reversed.

TAYLOR, C. J., LEWIS and BUSSEY, JJ., and LEGGE, Acting J., concur.