14501

TUTEN v. ALMEDA FARMS *ET AL.*

(192 S. E., 153)

October, 1936.

*Messrs. Randolph Murdaugh* and *J. W. Manuel*, for appellants, cite:

*Messrs. George Warren, C. Lester Thomas* and *W. C. Wolfe*, for respondent, cite:

June 16, 1937.

The opinion of the Court was delivered by MR. JUSTICE FISHBURNE.

This action was brought by Mrs. Harriet Tuten against the defendants for the admeasurement of her dower in the lands of her deceased husband, Dr. T. H. Tuten, who died testate on November 21, 1934.

Various interesting and important issues have been raised, some of which have been disposed of by the Special Referee to whom the cause was referred, and others, by the decree of the Circuit Judge. However, on the main issue, both the Special Referee and the Circuit Judge held that the plaintiff was entitled to have her dower admeasured in the real estate described in the complaint. The case is here on appeal from the circuit decree.

The complaint alleges, in substance, the marriage of respondent and Dr. T. H. Tuten; his seizin, during coverture, of the land described; his death, testate, and claim is made for dower.

The answers pleaded: A general denial; adverse possession in Almeda Farms, Inc., the corporate defendant; possession of such defendant under deed from Dr. T. H. Tuten, accompanied by respondent's renunciation of dower, in proper legal form, and for a valuable consideration; equitable estoppel; and the six-year statute of limitations against any attack respondent might try to make to repudiate or set aside the said renunciation of dower on the ground of fraud, duress, etc.

The reply, filed by respondent pursuant to an order of Court, alleged fraud and illegality in the execution of the renunciation of dower, in that: The renunciation was acknowledged before a notary public who was a stockholder, a director, and an officer of the grantee corporation; that a colorable corporation was created by the husband for the purpose of avoiding the dower laws, and of defrauding respondent of her right of dower; and that respondent never did freely and voluntarily, upon private examination, relinquish her inchoate right of dower.

The Special Referee, to whom all issues were referred, by consent of the parties, made a report sustaining all three grounds of attack made by the respondent in her reply against the validity of her renunciation of dower, and disallowed and overruled all contentions and defenses interposed by the appellants in their answers upon the trial before him.

Appeal was taken to the Circuit Court, which Court sustained the report of the Referee, with certain exceptions, adjudged that the plaintiff was entitled to dower, overruled all of the defenses set up by the appellants; and, among other things, held, as a matter of law, that Mr. Bowden, the notary public before whom the respondent's renunciation of dower was acknowledged, was disqualified, and that the renunciation was invalid for that reason. The Court further

held as a matter of law that the defense of equitable estoppel was not available to the appellants.

The issues presented will more clearly appear from a brief factual statement.

It appears from the evidence that some time during the year 1912, Dr. Tuten, apparently suffering from tuberculosis, left his home at Almeda, in Hampton County, S. C., and went to El Paso, Texas, in search of health, where he met the plaintiff, who was a native of the State of Illinois, and who owned considerable real estate in the State of Texas, and possibly in other states. On June 3, 1913, Dr. Tuten and the respondent were married, in the City of El Paso, and the next year, Dr. Tuten's health having improved, he returned to Almeda with his wife, the respondent, and they resided there together for a period of twenty-one years, until his death, which occurred on November 21, 1934.

It is admitted that at the time of his marriage Dr. Tuten held title to all the land involved in this controversy.

In the year 1924, Dr. Tuten and two others formed a corporation under the laws of this State, known as Almeda Farms, Inc., which is one of the defendants in this action. The capital stock of the corporation was divided into 2,000 shares, of which Dr. Tuten owned 1,998 shares, R. O. Bowden owned one share, and R. H. Welch owned one share. (Mr. Welch later died, and his share of the stock appears to have passed out of the case.)

Mr. Bowden was one of the corporators, and was elected a director and secretary of the corporation, and actively and continuously served as secretary from the date of the issuance of the charter until the death of Dr. Tuten.

On November 15, 1924, Dr. Tuten conveyed to this corporation—Almeda Farms, Inc.—all of his lands by deed, and this deed contained a renunciation of dower signed by the respondent, acknowledged before R. O. Bowden, as notary public, and his certificate appears to be regular in form. It

is this renunciation of dower which the appellants contend should be sustained.

We might say at the outset, after a careful examination of the testimony, that we concur with the Circuit Judge in his decision that the respondent renounced her dower on this deed in compliance with the statutory requirements; and that no fraud was practiced upon her in the formation of the corporation, Almeda Farms, Inc., for the purpose of defrauding the respondent of her right of dower.

We may also set at rest the issue made as to the nature and character of the plaintiff's cause of action.

It is contended by the appellants that although the complaint contains allegations pertinent to a suit for dower only, the cause of action, in the light of the entire pleadings—complaint, answers, and reply—and under the proof as it was developed, was converted from a legal into an equitable action. We cannot concur in this view.

Many actions are readily classified as legal or equitable, yet there is no general rule that can be applied in all cases. Generally, however, it may be said that the essential character of the cause of action, and the remedy or relief it seeks, as shown by the allegations of the complaint, determine whether a particular action is at law or in equity, unaffected by the conclusions of the pleader or by what the pleader calls it, or the prayer for relief, or the nature of the defense interposed, or new matter stated in the reply, or whether the action is statutory or otherwise. Notwithstanding this, however, it is said that the nature of the issues as raised by the pleadings or the pleadings and proof, and character of relief sought under them, determines the character of an action as legal or equitable. 1 C. J. S., Actions, § 54b. Also see *Alford v. Martin,* 176 S. C., 207, 180 S. E., 13.

It must be conceded that the case at bar, as brought, is an action at law. It is also as certainly true that Courts of law and Courts of equity have concurrent jurisdiction, under

the circumstances shown here, of the issues of fraud and estoppel; nor can there be any doubt that all other defenses and issues raised by the pleadings are cognizable by a Court of law.

In our opinion, this action was not converted into an equitable action by the pleadings or the proof. The chief matter at issue was the right of the respondent to have admeasurement of her dower, and it continued so to the end.

We next consider, was the renunciation of dower acknowledged before a notary public who was disqualified, and, if so, was the renunciation invalid for that reason?

In our opinion, the renunciation of dower was invalid, for the reason that it was taken before Mr. Bowden, a notary public who was disqualified to act, because he was a stockholder in the grantee corporation at the time the conveyance was made and executed by Dr. T. H. Tuten to Almeda Farms, Inc.

The great weight of authority in this country is to the effect that a stockholder of a corporation, whether his interest be great or small, is disqualified to act as a notary in taking an acknowledgment to any conveyance to or from the corporation.

The cases on this subject are collected in the annotation following the report of the case of *First National Bank of Cartersville v. State Mutual Life Insurance Company,* in 51 A. L. R., 1524. Also see annotations: 56 Am. St. Rep., 798; Ann. Cas., 1913-D, 373. Numerous cases are also cited in 1 C. J., 806, note 28.

The same rule of law is announced in 1 C. J. S., Acknowledgments, § 53e, and in 1 Am. Jur., Acknowledgments, § 56, where it is stated that while there is some conflict, a great majority of cases hold that a stockholder in a corporation or association is disqualified to take an acknowledgment of an instrument to which the corporation or association is a party, since he is beneficially interested.

It is said that any interest, however slight, works a disqualification, it being impossible to make the amount of interest a criterion, and that the stockholder is interested because of his stock ownership.

The reason given for the adoption of this rule is so well stated in *Chadron Loan & Bldg. Association v. O'Linn* (1901) 1 Neb. (Unof.) 1, 95 N. W., 368, 369, that we quote it with approval:

"These facts present the question of law whether a stockholder of a corporation who is likewise a notary public, is disqualified from taking and certifying an acknowledgment to an instrument wherein the corporation in named as grantee, and in which the corporation has a beneficial interest. It seems to be settled by a long line of decisions that an acknowledgment to an instrument taken by an officer who has a direct beneficial interest in the conveyance itself is void. The reason given in some of the cases is that the acknowledgment is a judicial or *quasi*-judicial act, and comes within the rule that a person may not be a judge in his own case, or one in which he has a beneficial interest. In others the reason of disqualification, and which we conceive to be the better reason, is that it would be against public policy to permit a grantee, mortgagee, or trustee or other person beneficially interested in the transaction, to take an acknowledgment to an instrument in which he is named as a party, or has a beneficial interest. The object of the law is to prevent the perpetration of fraud, and the policy of the law seems to be that the officer taking the acknowledgment must not be in such relationship to the grantee that there shall exist any temptation for the officer to do aught but his duty, impartially. Whilst, strictly speaking, a stockholder has no independent interest in the corporate property, as such, nevertheless his shares of stock entitle him to such aliquot part of the corporate property as his number of shares bears to the whole capital stock. If the corporate property is enhanced in value, the result is a corresponding increase in the value of

its shares of stock, and *vice versa* in cases of loss. It seems to us logical and a necessary conclusion that a stockholder in a corporation has a beneficial interest in the corporation, it may be much or little, depending on the number and value of the shares of stock held by him. The amount of the beneficial interest cannot be made a rule of law in determining whether a person is disqualified from acting as a notary in any given case."

This question was thoroughly considered in *Kothe v. Krag-Reynolds Co.,* 20 Ind. App. 293, 50 N. E. 594; *Ogden Bldg., etc., Ass'n v. Mensch,* 196 Ill., 554, 63 N. E., 1049, 89 Am. St. Rep., 330; and *Southern Iron, etc., Co. v. Voyles,* 138 Ga., 258, 75 S. E., 248, Ann. Cas., 1913-D, 369, 41 L. R. A. (N. S.), 375, and note.

In *Kothe v. Krag-Reynolds Co., supra,* it was held that an acknowledgment of a mortgage to secure an indebtedness to an incorporated company taken before a notary public who was a stockholder in the corporation was void. This decision is based, in part, upon provisions of the statute of the State of Indiana, but the question was exhaustively treated and discussed by the Court irrespective of the statute, and the conclusion ·announced that upon principles of public policy and according to the very great weight of authority, an officer who has a pecuniary interest in the debt intended to be secured by a mortgage is disqualified from certifying that the mortgage was acknowledged before him by the makers thereof.

Undoubtedly, the same qualification or disqualification· with respect to acknowledgments will also apply to certificates of renunciation of dower. In fact, the right of dower being held in such high regard, it is probable that the qualifications of a notary before whom a renunciation of dower is taken should be subjected to much closer scrutiny than other acknowledgments.

Counsel for appellants are not inadvertent to the fact that on this phase of the case, bearing upon the disqualifi-

cation of the notary, their contention is against the strong current of authority. But they say it is an arbitrary rule and should not be upheld, especially where the transaction is free from fraud and coercion, and the officer is fair and impartial as between the parties; that assuming such to be the case, the mere fact that the acknowledgment was taken before an interested officer will not vitiate the ceremony nor render it void *ipso facto*.

Among the small number of cases supporting the minority view, counsel cite us to the case of *Cooper v. Hamilton Perpetual Bldg. & Loan Ass'n,* 97 Tenn., 285, 37 S. W., 12, 13, 33 L. R. A., 338, 56 Am. St. Rep., 795. In that case, the question involved was whether a stockholder in a corporation is competent to take an acknowledgment upon a deed of trust, given to the corporation to secure a debt. The Court held that the taking of such acknowledgment was contrary to public policy, and by no means to be encouraged, and that "while the practice, which has become so prevalent should be discountenanced. and discontinued, still such acknowledgments are not absolutely invalid and void because of such interest or relationship, without more."

In a later Tennessee case, *Reed Fert. Co. v. Thomas,* 97 Tenn., 478, 37 S. W., 220, 221, the identical question was again presented to the Tennessee Court, and the Court adhered to the ruling in the *Cooper case,* but said: "We consider this question as settled, although, as heretofore stated, such practice should be abandoned, and not persisted in."

In an early case in this State, *Scanlan v. Turner,* 1 Bailey (17 S. C. L.), 421, 424, it was held that a magistrate cannot take the wife's renunciation of dower upon a conveyance in which he is interested. It is there stated:

"In the interpretation of statutes, the rule is, that the intention of the Legislature is to be collected from the terms used: but the subject matter to which they relate, must be taken into consideration; and to aid us in the interpretation, we may look to the old law, inquire of the evil which

existed, and consider of the remedy to be applied. For the same reasons, and by the same rule, we must judge of execution of a power derived from a statute, and take care, that in the manner it is so executed, as that the intention of the law giver may be fulfilled. It is also a settled principle, that no one concerned in the administration of justice, whether judicially, or ministerially, shall be permitted, to act in his own cause, unless by actual enactment, of which no example that I now recollect exists; not that the power may not be sufficiently general, nor because the party may not act with the utmost fairness, and in accordance with the law; but because it is unwise, and unsafe, to confide in any one a power, in the execution of which, he is surrounded with temptations, which all experience shows mere humanity to be incapable of resisting. The influence of interest is all-controlling; and it is wise, therefore, that all who act under legal authority, should be divested of it. The principle is not one limited by rule, or restrained by exceptions; but, like the laws of nature, it's application is universal, producing in its operation the utmost harmony and order."

The appellants cite and rely upon the case of *Dillon & Son Co. v. Oliver,* 106 S. C., 410, 91 S. E., 304, but it is conceded in their brief that the question in that case arose under the recording acts, and could be applicable here only by possible analogy. It was held in that case that the fact that the subscribing witness to a chattel mortgage who made the affidavit for record was a member of the mortgagee firm does not affect the operation of the record as notice, where the interest of the witness does not appear on the face of the record. As stated by the Circuit Judge in his decree, the rights of innocent purchasers and subsequent creditors were involved. No such rights are involved in this case, and we do not deem the *Dillon case* applicable.

The appellants earnestly submit that the respondent should be barred of her dower under the doctrine of equitable

estoppel. It is argued that the proof shows that the respondent owned real estate in her own right in the State of Texas, the laws of which state require the joint signature of wife and husband upon deeds of conveyance, and that Mrs. Tuten and Dr. Tuten had an oral understanding that she would renounce dower to any of his property whenever he desired to sell same, and that Dr. Tuten would sign deeds with her in respect to the conveyance of any of her property. Our attention is directed to certain portions of the testimony showing that Dr. Tuten did join with her in conveyances made by her of real estate in Texas, and that in two. or three instances she renounced dower to certain property in South Carolina mortgaged or conveyed by him. It is contended that this understanding was established, and that it would now be inequitable to allow Mrs. Tuten to claim dower in the real estate of her deceased husband, after having agreed to renounce dower therein; and in fact, having actually renounced dower, regular in form, upon the deed which conveyed all of his real estate to Almeda Farms, Inc.

As already adverted to, both the Special Referee and the Circuit Judge held, as a matter of law, that the doctrine of equitable estoppel does not apply, and is not available to the appellants, under the facts of this case.

It may now be regarded as settled in this State that a married woman, during the lifetime of her husband, may by covenant, in writing, for valuable consideration, legally bind herself not to claim dower out of her husband's lands; but, to have such effect, the covenant must be entirely free from doubt—clear, positive, and express in its terms. A verbal agreement, irrespective of the nature of the proof, and of the consideration, will not estop her, nor bar her claim of dower.

Dower has always been regarded as a sacred right in this State, and has always been strongly fortified against invasion. It is favored in a high degree by

the law, and Courts are vigilant and astute in preserving it, and will always award it in case of doubt. Dower exists also for reasons of public policy, and is recognized in this country as a positive and definite institution of the State. *Callaham v. Robinson,* 30 S. C., 249, 9 S. E., 120, 3 L. R. A., 497.

To hold that a right so highly regarded and so jealously protected may be barred by an oral agreement would render the right so unsafe, so insecure, and so tenuous and unsubstantial as to virtually destroy it, in a manner contrary to the legislative intent. Courts have gone far enough, in holding that a written contract not to claim dower or to renounce dower, when duly executed by a married woman, for valuable consideration, will bar and estop her from thereafter claiming it; but even with respect to written instruments the rule requires that they must be entirely free from doubt, clear, positive, and express in terms.

In the case of *Shelton v. Shelton,* 20 S. C., 560, the Court had under consideration a written agreement entered into between the husband and the wife with a view to separation. The husband conveyed certain property to the wife, which she agreed to accept in lieu of all claims or demands upon the husband or his estate, and by this instrument of writing she relinquished all further claims upon him for support, or otherwise. This Court, upon appeal, held that the written agreement in question did not in express terms include her right of dower, and that she was not, therefore, barred by the execution thereof. In the foregoing case, the Court cited the case of *Townsend v. Brown,* 16 S. C., 91, 92, with approval, to the effect that "a married woman may so covenant not to claim dower, as to make it binding upon her by way of estoppel. But we would say that the covenant of a married woman, to have that effect in relation to an inchoate right of dower, future and contingent in character, should be entirely free from doubt, clear, positive and express in its terms."

In *Smith v. Oglesby,* 33 S. C., 194, 11 S. E., 687, 688, the Court had under consideration again the identical question. In that case Mrs. Smith executed a written instrument in the presence of two witnesses, by which she agreed to release all her right and title to dower, for a consideration of $575.00, which was paid. The Court held that she had the power to so contract, and said:

"We cannot see why she could not make at that time a binding contract to release her claim for dower as well as a contract with reference to any other matter. If she had this power, she certainly exercised it, and that, too, in a *formal manner, in writing,* and for a valuable consideration in money, which was paid. We must think that this contract, *made and executed in this manner,* was a binding contract, and while not conveying the dower to the defendant in the manner required by the Act in such cases made and provided, yet should estop Mrs. Smith from now claiming it." (Italics added.)

In *Moon v. Bruce,* 63 S. C., 126, 40 S. E., 1030, 1031, the Court held that the written covenant relied on did not clearly express an intention to release dower, and said:

"Now, if it be true, under the authority of the cases of *Shelton v. Shelton,* 20 S. C. [560], 566, and *Smith v. Oglesby,* 33 S. C., [194], 197, 11 S. E., 687, that a married woman, without the private examination and the formalities required by the statute in relation to the renunciation of dower, could, upon valuable consideration, execute such a contract as would estop her from claiming dower, it is also true that, under the same authorities, to have such effect the contract 'should be entirely free from doubt—clear, positive, and express in terms.' "

In the case of *Gainey v. Anderson,* 87 S. C., 47, 68 S. E., 888, 891, 31 L. R. A. (N. S.), 323, the late Mr. Justice Hydrick reviews the cases which we have mentioned above, affirms the right of the widow to dower, and makes this significant statement:

"At any rate, the principle announced in those cases should be extended no further; for the practical effect of holding that a married woman may during coverture estop herself by covenant from claiming dower in the lands of her husband would be to annul the statute which requires that her dower shall be renounced in a specified manner after her examination separate and apart from her husband before certain officers designated."

This statement by Mr. Justice Hydrick had reference to the applicability of equitable estoppel to bar the right of dower when formally covenanted in writing. An oral agreement to accomplish the same purpose will not be countenanced nor given judicial sanction.

Other cases bearing upon the question, but which we will not take the time to discuss, are, *Watson v. Watson,* 172 S. C., 362, 174 S. E., 33, and *Pippin et al. v. Sams,* 174 S. C., 444, 177 S. E., 659. In both of these cases, the contract not to claim dower, signed by the married woman, was reduced to writing in the most formal manner.

In view of the rule of law announced, it will not serve any useful purpose to review the testimony bearing upon the alleged oral agreement. We may say in passing, however, that the evidence fails to establish the agreement on the part of the respondent.

The question of estoppel by innocent purchasers for value does not arise in this case.

The affirmative plea of adverse possession is without merit, because Mrs. Tuten's right to require the admeasurement of dower did not accrue until after the death of Dr. Tuten, in 1934.

The right to demand admeasurement of dower does not accrue until the death of the husband, and the statutes of limitation do not commence to run until then. 19 C. J., 559.

Under their plea of the six-year statute of limitation, the defendants contend that the plaintiff did not within six years

210

after discovery of the alleged fraud commence an action to vacate or cancel the purported renunciation of dower as being fraudulent.

The statute of limitation requiring action to be brought within six years after the discovery of fraud for relief therefrom is contained in Subdivision (6), Section 388, Code of Civ. Proc., 1932; but this limitation does not become current until a right of action accrues. *Suber v. Chandler,* 18 S. C., 526. And it is well settled that a wife has no right of action in respect to an inchoate right of dower until the death of the husband. *Grube v. Lilienthal,* 51 S. C., 442, 29 S. E., 230; *Ex parte Clark,* 130 S. C., 501, 126 S. E., 137.

The plaintiff is entitled to an admeasurement of dower, as recommended by the Special Referee, and adjudged by the Circuit Judge, and the cause is remanded for appropriate proceedings to that end.

All exceptions are overruled, and the judgment of the lower Court affirmed.

MR. CHIEF JUSTICE STABLER and MESSRS. JUSTICES CARTER, BONHAM and BAKER concur.