Margaret **KLUGH**, Katherine Klugh Maultsby, Mary Klugh Garner, John Bradley Klugh, William W. Bradley, III, Frederick H. Bradley, Patrick H. Bradley, Edna Bradley Troxell, Hugh W. Bradley, Mabel Bradley Payne, Mary Bradley Pressly, Thomas R. Bradley, William T. Bradley, Margaret Bradley Poole, David W. Bradley, John T. Bradley, Jr., Frances K. Bradley, Mark E. Bradley, Jr., Elizabeth Bradley McGarity, Robert F. Bradley, III, Thomas J. Bradley, Frances Wright Bradley, III, William R. Bradley, II, Rufus A. Johnson, III, Mary Bradley Brown, Margaret Bradley Shuford, Arthur L. Bradley, James B. Bradley, Curtis L. Bradley, David J. Wardlaw, Martha Wardlaw Buie, Foster Bradley Wardlaw, Jr., Ivey Jean Wardlaw Pressly, Robert S. Wardlaw, William W. Wardlaw, Mildred E. Wardlaw, John U. Wardlaw, Mary Wardlaw Deason, Annie Wardlaw Wright, Frances M. Wardlaw, John K. Bradley, Mary Bradley Miller, Martha Bradley Moody, Frances Trenholm Bradley, Jane H. Bradley, Martha B. Mayo, Robert F. Bradley, Jr., Eustace U. Bradley, Mary Bradley Cox, and Frances Thompson Sheppard, Plaintiffs,

v.

**UNITED STATES of America; Certain Lands Located in Abbeville, Greenwood and McCormick Counties, South Carolina, Being a Portion of the Estate of W.K. Bradley, Deceased; and the United States Department of Agriculture, Defendants.**

Civ. A. No. 73–95.

United States District Court, D. South Carolina, Greenwood Division.

Sept. 6, 1985.

Frank H. Clabaugh, Hilton Head Island, S.C., for plaintiffs.

Silvia Sepulveda-Hambor, Dept. of Justice, Washington, D.C., for defendants.

## ORDER

BLATT, District Judge.

This matter is before the court upon cross motions for summary judgment.

This court, after reviewing the entire record, including the briefs of counsel and applicable law, grants plaintiffs' motion for summary judgment to the extent indicated in this order.

■ The central issue in this case is whether the lineal descendants of W.K. Bradley, as devisees under Bradley's will, have a property interest in certain parcels of land, currently titled to the United States, that Bradley owned at his death. The lineal descendants who brought this action contend that they retain interests in the properties due to flaws in the procedure that the United States utilized in obtaining the land pursuant to the Weeks Act, 16 U.S.C.A. §§ 515, 517, 517a (West 1974). The plaintiffs argue that these irregularities, which occurred in three (3) judicial proceedings between 1936 and 1939, render the judgments that awarded title in these properties to the United States, void or voidable, as to the plaintiff's interests. The defects of which the plaintiffs complain include: [1]

(1) failure to join as parties, or to appoint a guardian *ad litem* to represent, unborn Bradley heirs;

(2) failure to appoint a guardian *ad litem* to represent unknown Bradley heirs who were served by publication; and

(3) failure of the guardians *ad litem* who were appointed to represented known minor and incompetent Bradley heirs to adequately protect their wards' interests.

In this suit against the United States, the plaintiffs seek return of title to the affected properties and an accounting for interim use.[2]

## I.

W.K. Bradley died on December 30, 1881. Under his will, dated December 8, 1881, Bradley devised his real property, including the parcels at issue in this case, to his wife and children "to be theirs and for their use and benefit for life, and after their death to go to their children and on down as far as the law will allow."

Between 1935 and 1937, the United States, acting through its Secretary of Agriculture, entered into several land option contracts with a number of adult Bradley heirs. While differing in form, each contract provided that the named vendors agreed to convey to the United States certain specified acreage if, within twelve (12) months of their entering into the option contract, the vendors were notified that the National Forest Reservation Commission had approved the purchase. The contracts further provided for the institution of condemnation proceedings if the vendors were

1. Initially, this court notes the absence of argument in the plaintiff's briefs that an irregularity occurred which would justify setting aside the judgments as to the interests of the adult Bradley heirs who consented at the time of the condemnations. In oral argument, however, the plaintiffs contended that the government did not obtain the proper consent of the Bradley heirs who were adults at the time of the condemnations. The plaintiffs reasoned that the adult Bradley heirs were foreclosed from giving valid consent because W.K. Bradley's will provided for the disinheritance of any family member who disposed of the property in "any way." The plaintiffs' contention is meritless. Such a forfeiture provision would not render an heir incapable of consenting to a condemnation and, thus, disposing of the property; it would, at best, expose such a consenting heir to a subsequent penalty of disinheritance. This being the sole irregularity claimed concerning the consenting adult Bradley heirs, these plaintiffs have asserted no jurisdictional basis for relief. This court can not set aside the condemnation judg-

ments as to their interests since no legal ground for such relief has been presented. *See Western Union Tel. Co. v. Dismang*, 106 F.2d 362 (10th Cir.1939). Furthermore, no party has ever raised in this proceeding the question of whether, even with consent, any adult or properly represented minor, incompetent, unknown heir, or unborn heir, could, through legal proceedings, transfer any contingent remainder which they possessed, since under certain circumstances, such contingent remainder interest may not be devised, transmitted, or assigned. *Lemmon v. Wilson*, 204 S.C. 50, 28 S.E.2d 792, 804 (1944). Because this issue affects only those in whom title finally vests on October 21, 1988, its resolution need not be determined at this time.

2. In this order, the court can pass with finality on liability as to an accounting. Insofar as the plaintiffs demand that title be returned to them, the court's opinion does not have the same degree of finality since title does not vest until 1988. *See Klugh, et al. v. United States*, 588 F.2d 45, 51 (4th Cir.1978).

unable to provide title satisfactory to the Attorney General of the United States. Acreage specified in four of these option contracts is also at issue in the case at bar.[3]

Pursuant to the Weeks Act, between 1936 and 1939, the United States condemned 7,913.5 acres of land in three separate judicial proceedings for a national forest. As foreshadowed in the previously mentioned contracts, the United States included the optioned lands in these condemnations. In the condemnation proceedings, the *unborn* Bradley heirs were not joined as parties, nor did the court appoint a guardian *ad litem* to protect their interests. The *unknown* Bradley heirs were joined and served by publication, but the court did not appoint a guardian *ad litem* to represent their interests. The *minor* and *incompetent* Bradley heirs were joined and served by publication, and the court appointed guardians *ad litem* to protect their interests.[4] The known adult Bradley heirs were joined and did not object to the condemnations.

As previously noted, these condemnation proceedings culminated in judgments that awarded the United States title to the properties described therein. In 1973, the plaintiffs filed this action seeking to have the court set aside those condemnation judgments to the extent that the plaintiffs' interests in the properties were affected.

Of primary importance in this case was the interpretation of W.K. Bradley's will. Bradley devised his real property and mills to his wife and children "to be theirs and for their use and benefit for life, and after their death to go to their children and on down as far as the law will allow." The will indisputably devised a life estate to Bradley's wife and five children, but the disposition the testator intended by the phrase, "and after their death to go to their children and on down as far as the law will allow," raised serious and complex legal questions.

This court previously ruled that Bradley intended to devise life estates to successive lineal generations as a class, with the fee vesting in as many members of the next lineal class as was legally permissible under the rule against perpetuities. The court determined that the fee simple title vested twenty-one (21) years and nine (9) months after W.K. Bradley's death in his then living great grandchildren. With this interpretation of the will, the court traced through a submitted genealogical chart of the W.K. Bradley family and concluded that the statutorily required consent for the sale of the entire vested remainder interest had been obtained, since the remaindermen were properly served adults who allowed the condemnations to proceed to judgment without objection. For these reasons, the court earlier granted the defendants' motion for summary judgment in 1977. *Klugh, et al. v. United States*, No. 73–95 (D.S.C. February 2, 1977).

The Fourth Circuit Court of Appeals disagreed with this court's conclusion that the testator intended to make a class gift. *Klugh, et al. v. United States*, 588 F.2d 45 (4th Cir.1978). Instead, the appeals court interpreted the testator's intent, as manifested in the will, to create successive life estates individually in his lineal heirs for as long as the rule against perpetuities might allow. This interpretation placed the vesting of the fee twenty-one (21) years and nine (9) months after the death of the survivor of the children and grandchildren who were living at the testator's death. The appeals court determined that under the facts of the case at bar, "the fee to the testator's lands will not vest until January 21, 1988, and possibly as much as nine months later."[5] *Id.* at 51. Accordingly,

---

**3.** The United States disputes that the land specified in one of the option contracts was part of W.K. Bradley's estate at the time of the condemnations. It is currently unnecessary to pass on this issue.

**4.** The answers of the guardians in the condemnation proceedings were almost identical, "sub-

mit[ting] their [wards] rights and interests in the matters in question to the protection of the court."

**5.** Whether title passes per stirpes or per capita remains for future determination.

the judgment of this court was reversed, and the case was remanded for further proceedings in accordance with the appeals court opinion. The action, on remand, is currently before this court on cross-motions for summary judgment.

## II.

The parties agree that the United States acquired the subject properties pursuant to the Weeks Act, 16 U.S.C.A. § 516 (West 1974). That statute provides, in part, that:

[t]he Secretary of Agriculture is authorized to purchase, in the name of the United States, such lands as have been approved for purchase by the National Forest Reservation Commission at the price or prices fixed by said commission. No deed or other instrument of conveyance shall be accepted or approved by the Secretary of Agriculture under this section until the legislature of the State in which the land lies shall have consented to the acquisition of such land by the United States for the purpose of preserving the navigability of navigable streams.

*Id.*[6] Similarly, both sides concur that the Legislature of South Carolina conditionally consented to the acquisitions through the enactment of S.C.Code Ann. § 3–1–410 (Law.Co-op.1977).[7] That statute provides, in part, that:

[t]he consent of the State is hereby given to the acquisition by the United States, by purchase, gift or condemnation according to law, of such forest lands or such other property as it may acquire by purchase, deed or otherwise in this State as, in the opinion of the Federal Government, may be needed for the establishment of a national forest service in that

region; *provided,* that unless the consent of the owner of such land is had and obtained, nothing herein contained shall be construed as giving the right to condemn any building, dwelling house or cultivated or pasture land.

*Id.* In sum, the United States was authorized to purchase property that encompassed a building, dwelling house, or cultivated or pasture land only if the owner of such property consented to the sale. The parties have stipulated, for purposes of these cross motions for summary judgment, that at least one acre of condemned Bradley land encompassed a building, dwelling house or cultivated or pasture land at the time of the federal acquisitions, that at least one of the plaintiffs qualifies as an heir of W.K. Bradley and was not represented by a guardian *ad litem* in any of the condemnation cases, and that at least one of such unrepresented plaintiffs will be alive on October 21, 1988.

## III.

The plaintiffs argue that under the will of W.K. Bradley, they are owners of life estates and, additionally, have a contingent remainder interest in the properties that the government condemned. As owners of such interests, the plaintiffs contend that the United States was required to obtain their consent as a prerequisite to a proper transfer of title to the Bradley lands. It is alleged that the statutorily mandated consent was not obtained from the plaintiffs since they are either (1) the *unborn* Bradley heirs who were neither joined as parties in the condemnation proceeding nor represented by a guardian *ad litem;* (2) the *unknown* Bradley heirs who were served by publication, but who were not represent-

---

6. This section of the code has undergone significant amendment. 16 U.S.C.A. § 516 (West Supp.1985). The parties have not contended that the revised statute is pertinent to the disposition of this case. The statute as it appeared at the time of the condemnation will govern this litigation.

7. Initially, the United States denied the plaintiffs' allegation that the condemnations were subject to the state consent statute. *See* Amend-

ed Answer paragraph 3 (Jan. 20, 1983). The government has apparently abandoned that position. The court reaches this conclusion for two reasons. First, the United States chose not to contest the statute's applicability in its summary judgment brief. Second, the government seemingly endorsed the statute's applicability when it labelled a quoted segment of S.C.Code Ann. § 3–1–410 as "[t]he relevant portion of the South Carolina consent statute."

ed by a guardian *ad litem* in the condemnation proceeding; or (3) the known minor and incompetent Bradley heirs whose appointed guardians *ad litem* failed to adequately protect their interests in the condemnation proceeding. As a result of these irregularities in obtaining owner consent, the plaintiffs assert that the condemnation judgments are void, or voidable, and that Rules 60(b)(4), and 60(b)(6), Fed.R.Civ. Pro. (West 1982), bestow jurisdiction on this court to set aside those condemnation judgments.

■■■ The United States does not contest that, under the Bradley will, and absent condemnation, the plaintiffs would be owners of life estates and would own a contingent remainder interest in the subject lands; neither does the government contest that, as such owners, the plaintiffs' consent was a prerequisite to purchase these properties. Instead, the United States claims that the statuate of limitations bars this action. Further, the government contends that the plaintiffs failed to properly plead the guardian *ad litem* aspects of the consent issue, and, thus, are foreclosed from submitting that theory to the court on a motion for summary judgment. Even if the guardian *ad litem* aspects of consent were pled, the government submits that the lack of consent is, at best, mere error to be corrected on direct appeal and not an irregularity that would render the judgments void; at worst, the United States urges, such is a voidable error that was cured either through publication notice or ·when the government deposited just compensation into the respective county treasuries at the time the condemnation judgments were entered.[8]

### IV.

■■■ Until a party's interest vests, the statute of limitations does not begin to run against him as to an action he may wish to institute challenging another's title to the property. *Walter J. Klein Co. v. Kneece*, 239 S.C. 478, 123 S.E.2d 870 (1962); *Wooten v. Standard Life & Casualty Ins. Co.*, 239 S.C. 243, 122 S.E.2d 637 (1961); *Tuten v. Alameda Farms*, 184 S.C. 195, 192 S.E. 153 (1937). Since title to the properties at issue in this suit will not vest until October of 1988, *Klugh, et al. v. United States*, 588 F.2d 45, 51 (4th Cir.1978), the government's statute of limitations argument is no defense as to the plaintiff's action seeking title to the property.[9] Insofar as the plaintiffs seek an accounting, however, the government's statute of limitations may bar some plaintiffs and their predecessors in individual cases, but this will have to be developed in later factual proceedings.

### V.

■■■ Sufficiency of the pleadings is a question of federal law. *Bryan v. Ker-*

8. The government also contends that the doctrines of *res judicata* and collateral estoppel bar consideration of the plaintiffs' consent claims. A void judgment, however, is subject to both direct and collateral attack. *Lubben v. Selective Service System Local Bd. No. 27*, 453 F.2d 645 (1st Cir.1972); *Graciette v. Star Guidance, Inc.*, 66 F.R.D. 424 (D.N.Y.1975). This court is aware of the general rule that a voidable judgment is subject only to direct, not collateral attack. *A.D. Juilliard & Co. v. Johnson*, 166 F.Supp. 577 (D.N.Y.1958), *aff'd*, 259 F.2d 837 (2d Cir.1958), *cert. denied*, 359 U.S. 942, 99 S.Ct. 723, 3 L.Ed.2d 676 (1959). The rationale for this rule is to establish a requirement that the affected party raise such voidable error on direct appeal so that such error can be corrected. This rule, however, is based on the premise that a competent party exists to raise the error. In this action, some of the plaintiffs who were served by publication allege voidable error concerning nonexistent or inadequate guardians *ad litem* representation as the basis for setting aside the condemnation judgments. Collateral attack should be allowed here since the voidable errors themselves evidence the absence of the underlying premise of *res judicata* and collateral estoppel; the plaintiffs, by reason of their disabilities, were incapable of raising the voidable errors on direct appeal. *See Anderson v. Anderson*, 327 S.E.2d 355, 356 (S.C.App.1985).

9. Any person living on October 21, 1988, when title vests, who was alive and not under a disability at the time of the condemnation proceedings, who was served and whose consent was obtained, may be barred from an interest in the properties due to the government's compliance under those circumstances with the Weeks Act and S.C.Code Ann. § 3–1–410; *But see* Footnote # 1, *Lemmon v. Wilson.*

*shaw,* 366 F.2d 497 (5th Cir.1966). Under the federal system of notice pleading, the complaint is designed to put the defendant on notice of the incident out of which the cause of action arose. *Roberts v. Acres,* 495 F.2d 57 (7th Cir.1974). This type of pleading requires a party to submit a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.Pro. 8(a)(2) (West 1960). A party, by contrast, is not required to plead either evidentiary matters or the factual particulars of any claims. *Maclin v. Paulson,* 627 F.2d 83 (7th Cir.1980). Claims that have not been pleaded, however, may not be the basis of recovery. *Atlas Chemical Industries, Inc. v. Moraine Products,* 509 F.2d 1 (6th Cir.1974).

■ In this case, the plaintiffs fulfilled the requirement of notice pleading. In paragraph nine (9) of the amended complaint, plaintiffs alleged, "[t]hat the consent of the Plaintiffs to the acquisitions of the said lands by the United States of America was not given as required by law." [10] This allegation, coupled with an earlier assertion that consent was required for title to properly pass to the United States, put the defendants on notice of a claim that would entitle the pleader to relief. Plainly, the government was on notice that lack of proper consent was in issue. The plaintiffs were not required by notice pleading to shoulder the additional burden of pleading the factual guardian *ad litem* aspects of the consent claim; [11] thus, the plaintiffs are entitled to submit that factual theory to the court as a basis of

recovery on their motion for summary judgment.

## VI.

■ Pursuant to Rule 60(b), Fed.R.Civ. Pro. 60(b) (West 1982), a federal district court has jurisdiction to set aside certain judgments. The portions of the rule relevant to this litigation provide:

On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceedings for the following reasons: ... (4) the judgment is void; ... (6) or any other reason justifying relief from the operation of the judgment.... A motion under this subdivision (b) does not affect the finality of a judgment or suspend its operation.

*Id.* (b)(4), (b)(6). As to the interests of the present Bradley heirs who were unborn, and not represented in the condemnation proceedings by a guardian *ad litem* when the condemnation sales were completed, this court has concluded that, under Rule 60(b)(4), the condemnation judgments should be set aside as being void.[12] Pursuant to Rule 60(b)(6), this court similarly has concluded that, for equitable considerations, the condemnation judgments should be set aside as to the interests of the present Bradley heirs who were unknown at the time of the condemnation judgments, and who were not represented by a guardian *ad litem,* and the known minor and incompetent Bradley heirs who received inadequate guardian *ad litem* representation in that litigation.[13]

**10.** The defendants did not exercise their right to move for a more definite statement. Instead, they answered, "9. Deny."

**11.** The government is not being treated as harshly as it may, at first blush, appear; liberal discovery is available for a party to uncover the specific factual underpinnings of a claim that an adversary has pleaded. *See Roberts,* supra.

**12.** Unborn heirs should not be confused with unknown heirs. Unknown heirs are those who were in being at the time of the action. If unborn heirs are construed as a subset of unknown heirs, however, they would be entitled to

relief under Rule 60(b)(6) with the other unknown heirs.

**13.** In the case at bar, relief is sought and granted under two different subsections of Rule 60(b). The well established concept of mutual exclusivity, *see generally* 11 C. Wright & A. Miller, *Federal Practice and Procedure* § 2864 (1973) (and cases cited therein) is not violated, however, because the court awards certain classes of plaintiffs *individual* relief from the challenged judgments and such relief, in each instance, is based upon a different subsection of Rule 60(b).

## A.

Under Rule 60(b)(4), "the only question for the court is whether the judgment is void; if it is, relief from it should be granted." *Marquette Corp. v. Priester*, 234 F.Supp. 799, 802 (D.S.C.1964) (quoting *Austin v. Smith*, 312 F.2d 337, 343 (D.C.Cir. 1962)).

A judgment is void if the court that rendered it lacked jurisdiction of the subject matter, or of the parties, or acted in a manner inconsistent with due process. *Margoles v. Johns*, 660 F.2d 291 (7th Cir. 1981) *cert. denied*, 455 U.S. 909, 102 S.Ct. 1256, 71 L.Ed.2d 447 (1982); *In re Four Seasons Securities Laws Litigation*, 502 F.2d 834 (10th Cir.1974), *cert. denied*, 419 U.S. 1034, 95 S.Ct. 516, 42 L.Ed.2d 309 (1975). Mere error does not render the judgment void unless the error is of constitutional dimension. *Simer v. Rios*, 661 F.2d 655 (7th Cir.1981), *cert. denied, sub nom Simer v. United States*, 456 U.S. 917, 102 S.Ct. 1773, 72 L.Ed.2d 177 (1982).

In the condemnation judgments challenged at bar, the present plaintiffs who are Bradley heirs, and who were not in being when the judgments were entered, were neither joined as parties nor represented by guardians *ad litem*. To determine the rights of persons not even made parties to the litigation, and who were, additionally, not in being when such determination was made, is conduct clearly repugnant to the concept of due process. As to the interests of these plaintiffs, the condemnation judgments are adjudged to be void.[14]

In contrast, when a party has been properly served, he is brought within the court's jurisdiction and subsequent irregularities in the appointment of a guardian *ad litem* do not render the judgment void. *Robertson v. Blair*, 56 S.C. 96, 34 S.E. 11 (1899); *Barfield v. Barnes*, 108 S.C. 1, 93 S.E. 425 (1917); *Greer v. Greenville County*, 245 S.C. 442, 141 S.E.2d 91 (1965). In this case, the United States served by publication all known and unknown Bradley heirs, including minors and incompetents. This was sufficient to bring those heirs within the jurisdiction of the court and render any irregularity in the appointment of a guardian *ad litem* voidable error. Since Rule 60(b)(4) is exclusively for relief from void judgments, the known and unknown Bradley heirs are foreclosed from relief under this particular subsection of the rule because they were served.

## B.

A court may set aside a judgment pursuant to Rule 60(b)(6) when compelled by unusual or exceptional circumstances. *U.S. v. $3,216.59 in U.S. Currency*, 41 F.R.D. 433 (D.S.C.1967); *Marquette Corp. v. Priester*, 234 F.Supp. 799 (D.S.C. 1964). Relief may be awarded when the challenged judgment resulted from an excusable default of the party against whom it was directed when the circumstances go beyond the earlier clauses of the rule. *See* 11 C. Wright & A. Miller, *Federal Practice and Procedure*, § 2864 (1973). If the proper circumstances are presented, Rule 60(b)(6) should be given liberal construction

**14.** The United States contended in oral argument that the express language of Rule 60(b) forecloses relief to any heir who was unborn at the time of the condemnations because no unborn heir was "a party or his legal representative" to the original condemnation proceedings. This court recognizes that there is, as a general rule, merit to this argument, *Screven v. U.S.*, 207 F.2d 740 (5th Cir.1953); however, under the circumstances of this case, the unborn heirs were sufficiently connected and identified with the original condemnation actions to attack those judgments. *Dunlop v. Pan American Airways, Inc.*, 672 F.2d 1044 (2d Cir.1982). This case is especially suited for Rule 60(b) relief since, in addition to the then unborn Bradley heirs, the parties to the original condemnation judgments—(the United States, the then adult Bradley heirs, and the then minor, incompetent and unknown Bradley heirs)—are parties to this action. *See Karnegis v. Schooler*, 57 F.Supp. 178 (N.D.Tex.1944) (third parties not entitled to Rule 60 relief unless original parties who secured the decree are parties to new suit). In its supplemental brief filed after oral argument, the United States conceded that the unborn Bradley heirs were sufficiently connected and identified with the original condemnation proceedings to attack those judgments in this action.

"to the end that justice is accomplished".[15] *Marquette Corp.* at 803.

■ As this court has noted, when a party has been properly served, as have the remainder of these plaintiffs, irregularities in the appointment of a guardian *ad litem* do not render the judgment void. If a judgment was rendered without regard to a legal disability, however, then that judgment may be set aside for *equitable* reasons. *Ex Parte Kibler*, 53 S.C. 461, 31 S.E.2d 274 (1898); *Ex Parte Roundtree*, 51 S.C. 405, 29 S.E. 66 (1898). This is logical since "[s]uch a person is incapable of putting his competency in issue in the prior suit." *Anderson v. Anderson*, 327 S.E.2d 355, 356 (South Carolina Court of Appeals 1985).

■ This case presents such an equitable ground for setting aside the challenged condemnation judgments. While the unknown Bradley heirs were served, they did not receive guardian *ad litem* representation. The court's failure to appoint a guardian *ad litem* allowed the condemnation judgments to be rendered without regard to the status of the unknown Bradley heirs. Since the unknown Bradley heirs could not participate in those proceedings, they could not raise this issue as error on appeal. *Cf. Stewart Securities Corp. v. Guaranty Trust Co.*, 71 F.R.D. 32 (D.C.Okla.1978) court's power to vacate a judgment in the interest of justice under Rule 60(b)(6) is not intended to relieve a party from the consequences of a free, calculated and deliberate choice: *cf. also* *Loucke v. U.S.*, 21 F.R.D. 305 (D.C.N.Y. 1957); *Whiteleather v. U.S.*, 264 F.2d 861 (6th Cir.1959). These facts present the type of exceptional circumstances that justify relief from judgment pursuant to Rule 60(b)(6); therefore, this court sets aside the condemnation judgments as they affect the interests of the present Bradley heirs [16] who were unknown when said judgments were entered.

■ The known minor and incompetent Bradley heirs similarly present this court with exceptional circumstances justifying relief pursuant to Rule 60(b)(6). These plaintiffs were served and guardians *ad litem* were appointed to represent their interests. These guardians, however, only submitted their wards' rights and interests to the protection of the court.[17] A guardian *ad litem* who merely files a formal answer submitting the wards' rights to the protection of the court fails to perform his duty. *Cagle v. Schaefer*, 115 S.C. 35, 104 S.E. 321 (1930). Such inadequate representation does not render the judgment void, but it is an error "for which a judgment may be set aside." *Simpson v. Doggett*, 159 S.C. 294, 156 S.E. 771 (1930). By reason of their minority and incompetence, these Bradley heirs and their successors in interest could not raise this as an error on direct appeal. Under these circumstances, relief from the condemnation judgments pursuant to Rule 60(b)(6) is granted as to the interests of the minor and incompetent Bradley heirs [18] who were parties to con-

---

**15.** The United States correctly contends that a party must act promptly to set aside an offending judgment in order to present proper circumstances justifying Rule 60(b)(6) relief; if a party's delay in attacking a judgment becomes unreasonable under the circumstances of a particular case, the defense of laches would defeat a claim for Rule 60(b)(6) relief. Undue delay, however, is not a defense here because a fog of complex real property issues concealed from these laymen plaintiffs whether they possessed any interest about which they might complain. The conflicting judicial opinions concerning these preliminary issues, including in whom and when title vested under the will, highlight the complexity that handicapped the plaintiffs from demanding Rule 60(b)(6) relief any sooner than they did; this court and at least one judge on the appeals panel had an opinion at odds with the majority panel's determination.

**16.** This ruling may result in a conflict of interest among the plaintiffs. For every unknown and/or improperly represented Bradley heir who is held entitled to an interest in the subject properties, the percentage of interest held by each unborn Bradley heir is reduced.

**17.** *See* Footnote 3, *supra.*

**18.** As between these parties, the money the United States paid into county treasuries when the condemnation judgments were rendered can only act as an offset to what an individual

demnation proceedings but were improperly represented.

## VII.

 For the aforesaid reasons, the court grants the plaintiffs' motion for summary judgment on the issue of liability to the extent indicated herein. Such relief is interlocutory in character because genuine issues remain as to the type of accounting required, the amount of damages, to whom such damages will be paid, in whom title will eventually vest on October 21, 1988, and the exact manner in which relief shall be afforded those who shall become fee simple title holders.[19]

This court being of the opinion that this order involves a controlling question of law as to which there is substantial ground for difference of opinion, and that an immediate appeal from this order may materially advance the ultimate termination of this litigation, permission is, therefore, granted by this court to any of the parties hereto, if they be so advised, to petition the Court of Appeals for the Fourth Circuit to allow an appeal from this order in accordance with 28 U.S.C. § 1292(b), and Rule 5 of the Federal Rules of Appellate Procedure. Therefore, it is

ORDERED, that further proceedings in this case be stayed, pending a determination by the parties, within the time required by law, as to whether they shall seek an interlocutory appeal of this order, and whether, if sought, such appeal is granted by the Fourth Circuit Court of Appeals.

AND IT IS SO ORDERED.

plaintiff may be awarded in an accounting if that same plaintiff received money from the county treasury funds.

**19.** Pursuant to Rule 60(b), judgments may be reopened, modified, corrected, set aside and vacated. *Finucane v. Bindczyck,* 184 F.2d 225 (D.C.Cir.1950), *rev'd on other grounds,* 342 U.S. 76, 72 S.Ct. 130, 96 L.Ed. 100 (1951). While some courts have restricted Rule 60(b) relief to the setting aside of an offending judgment, this court believes the better view allows affirmative relief to be granted in a proper case. *See U.S. v. Jacobs,* 298 F.2d 469 (4th Cir.1961); *see also Aro Corp. v. Allied Witan Co.,* 531 F.2d 1368 (6th Cir.1976); *Conerly v. Flower,* 410 F.2d 941 (8th

Cir.1969); *Hartford-Empire Co. v. Shawkee Manufacturing Co.,* 163 F.2d 474 (3d Cir.1947). Under the circumstances herein, where twelve years have passed since suit was instituted, if this court now refused to grant affirmative relief, in addition to setting aside the offending judgments, the statute of limitations might consequently bar many of the plaintiffs from an accounting in any newly instituted suit. For this reason, as well as in the interest of judicial economy, this court reserves the right to grant such affirmative relief as the plaintiffs may be entitled to receive upon completion of further discovery herein.